OPINION OF THE COURT
 

 Chief Judge Wachtler.
 

 The Commissioner of the State Division of Human Rights found that petitioner, the County of Onondaga Sheriff’s
 
 *628
 
 Department, discriminated against complainant Arlene S. Cottongim on the basis of race and sex, when it compelled her to resign her position as Deputy Sheriff. The two central questions are whether the Commissioner’s determination is supported by substantial evidence in the record, and whether the Commissioner acted within his discretion in ordering that complainant be offered reinstatement to her Deputy Sheriff position. The Appellate Division answered these two questions in favor of the Commissioner. We now affirm.
 

 Complainant, a white female, was employed by the Onondaga County Sheriff’s Department as a juvenile transport officer from 1974 through April 1979. Her duties consisted of transporting juveniles between Family Court and various institutions located throughout New York State and guarding juveniles during court proceedings. Complainant was not a civil service appointee, but instead was a
 
 "Flaherty
 
 employee,” the term deriving from the case of
 
 Matter of Flaherty v Milliken
 
 (193 NY 564). Under that case Sheriff’s employees performing civil functions, as opposed to performing criminal duties, are considered to be in the personal employ of the Sheriff, and are not subject to or protected by the Civil Service Law. The parties agree, therefore, that as a result of complainant’s status as a
 
 Flaherty
 
 employee she was an "at will” employee of the Sheriff, and not protected from discharge under the Civil Service Law.
 

 Complainant’s claim arose from the reaction of the Sheriff’s Department to her association with Deputy John Stevens, a black male deputy also assigned to the juvenile transport division. Stevens was a friend of complainant’s, and performed the same employment duties as complainant, although he was a civil service employee and not a
 
 Flaherty
 
 employee.
 

 On the morning of April 26, 1979, complainant was at home with a valid illness, when, at approximately 9:30 a.m., Deputy Stevens appeared uninvited at her door. Stevens explained to complainant that although he had called in sick, he was not really sick. He then said that he did not feel well, and complainant allowed him to lie down in the bedroom, while she returned to a separate room. Later that day a Sheriff’s Department Internal Affairs Officer came to complainant’s home and discovered that Stevens was there. Soon after, the Personnel Commander of the Sheriff’s Department called complainant and told her that she was fired. Complainant then asked to talk to the Sheriff directly and was told to come to the Sheriff’s office the next day.
 

 
 *629
 
 A meeting was held the next day and was attended by complainant, Sheriff John C. Dillon, and various senior officers in the Sheriff’s Department. At this meeting Sheriff Dillon informed complainant that "he would not tolerate such goings on,” and, after briefly reviewing the incident involving Deputy Stevens and complainant’s general work record, told complainant that she had the choice of resigning or being fired. She resigned that day.
 

 Approximately two weeks later Deputy Stevens was charged with two separate instances of misconduct by the Sheriff’s Department. First, Stevens was charged with abuse of sick leave for falsely calling in sick on April 26, 1979, when in fact he was not sick. Second, Stevens was charged with physical assault and verbal abuse of a juvenile prisoner in his custody on April 24, 1979. The penalty sought to be imposed by the Sheriff’s Department for both incidents was a total of three days suspension without pay. When Stevens waived his right to a section 75 Civil Service Law hearing, the penalty imposed was reduced to a two-day suspension without pay.
 

 It was then that complainant filed her complaint with the State Division of Human Rights, alleging that the Sheriff’s Department unlawfully discriminated against her on the basis of race and sex. A hearing was held pursuant to Executive Law § 297 before an Administrative Law Judge appointed by the Commissioner. In the administrative proceedings the Sheriff’s Department originally took the position that complainant was terminated for abusing sick time; at the hearing, however, it was agreed that she had in fact been validly on sick leave. Nevertheless, the Sheriff’s Department then maintained that, in any event, complainant was properly dismissed for failing to report Deputy Stevens’ abuse of sick time, for violating a Sheriff’s rule against conduct "which would tend to bring discredit upon the department,” and for generally having an unsatisfactory work record.
 

 The hearing testimony revealed, however, that no written or oral rule requiring a coemployee to report a rule violation of another employee then existed, or had ever been applied by the Sheriff’s Department, except allegedly in complainant’s case. In addition, it appeared that although complainant’s tenure at the Sheriff’s Department was not without some incident, no disciplinary action had at any time been taken against complainant prior to her forced resignation on April 27, 1979. It was also established that Deputy Stevens had
 
 *630
 
 never been charged with having acted so as to tend to bring discredit upon the Sheriffs Department, nor had he in fact been charged with any rule violation or act of misconduct directly attributable to his presence at complainant’s home on April 26, 1979.
 

 On this record the Commissioner held that complainant had been discriminated against on the basis of sex and race, and ordered that the Sheriffs Department pay complainant compensatory damages for lost wages and benefits, offer her reappointment to her Deputy Sheriffs position, and pay her $30,000 for the mental anguish she suffered. The Appellate Division modified the Commissioner’s decision by reducing the award for mental anguish to $15,000, and, as modified, confirmed the determination. On this appeal complainant does not challenge the reduction of the award by the Appellate Division.
 

 I
 

 Complainant, as a
 
 "Flaherty”
 
 or "at will” employee, could lawfully have been discharged for any reason or for no reason, but not for a statutorily impermissible reason
 
 (see, e.g., Sabetay v Sterling Drug,
 
 69 NY2d 329, 337;
 
 Imperial Diner v State Human Rights Appeal Bd.,
 
 52 NY2d 72, 74). Executive Law § 296 (1) (a), which is part of the New York Human Rights Law and which applies to public employers, bars discrimination in employment on the basis of sex or race
 
 (see, e.g., Matter of City of Schenectady v State Div. of Human Rights,
 
 37 NY2d 421, 430). Thus complainant, although an employee at will, could not lawfully be discharged from her employment on these bases.
 

 It is the Commissioner of the Division of Human Rights who is primarily responsible for administering the Human Rights Law, and, upon judicial review, his decisions are properly accorded substantial deference when he acts within his area of expertness
 
 (see, Matter of Board of Educ. v State Div. of Human Rights,
 
 56 NY2d 257, 261;
 
 Imperial Diner v State Human Rights Appeal Bd., supra,
 
 at 78). In reviewing the Commissioner’s determinations, we have long recognized that identifying discriminatory acts indeed requires expertness, because those intent upon unlawful discrimination "cannot be expected to declare or announce” their purpose, but often pursue their ends "in ways that are devious, [and] by methods subtle and elusive”
 
 (see, Matter of Holland v Edwards,
 
 307 NY
 
 *631
 
 38, 45). Thus it has become axiomatic that this court, in reviewing the Commissioner’s findings on the presence of unlawful discrimination, "may not weigh the evidence or reject [the Commissioner’s] choice where the evidence is conflicting and room for a choice exists”, and that the judicial function is concluded when it is determined that the Commissioner’s determination is supported by substantial evidence on the record
 
 (Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.,
 
 59 NY2d 69, 75;
 
 Matter of Holland v Edwards, supra).
 
 Even where conflicting inferences may be rationally drawn from the record, those inferences are for the Commissioner, and not for this court, to draw.
 

 The record amply supports the Commissioner’s conclusion that complainant was discriminated against on the basis of sex and race. First, the record sufficiently supports the conclusion that complainant made out a prima facie case of discrimination by showing that she, as a white woman, was disciplined differently from her black male coemployee, Deputy Stevens
 
 (see, Matter of Pace Coll. v Commission on Human Rights,
 
 38 NY2d 28, 39). The Sheriff’s Department argues, however, that the difference in treatment raises no inference of discrimination in this case because complainant was an "at will” employee, while Deputy Stevens was protected by the Civil Service Law. Notwithstanding this difference in employment status, however, the Commissioner could rationally find that the differential treatment of complainant and Deputy Stevens raised an inference of discrimination.
 

 True, Deputy Stevens was protected by the Civil Service Law and complainant was not. Nevertheless, complainant and Deputy Stevens performed the same duties at the Sheriff’s Department and were involved in the same incident that gave rise to both being disciplined; Deputy Stevens, however, was never even charged with the offenses — acts tending to discredit the Sheriff’s Department, and failure to report a coemployee’s rules violation — which the Sheriff’s Department maintained were the cause of complainant’s discharge from employment. In fact, for the whole incident Deputy Stevens was charged only with falsely calling in sick, but was not charged with any violation due to his presence at complainant’s home. Thus while a difference in employment status could superficially explain the differing severity of the penalties imposed, it in no way explains why Deputy Stevens’ presence at complainant’s home caused her termination from employment, but gave rise to no allegations of misconduct against Stevens.
 

 
 *632
 
 Second, in the face of this showing of disparate treatment, the burden then shifted to the Sheriffs Department to show that "the employee was terminated for some independently legitimate reason which was neither a pretext for discrimination nor was substantially influenced by impermissible discrimination”
 
 (Matter of Pace Coll. v Commission on Human Rights, supra,
 
 at 40). We conclude that the record adequately supports the Commissioner’s conclusion that a sufficient neutral justification for complainant’s termination was not shown.
 

 The Sheriffs Department’s initial explanation for complainant’s discharge was that she abused sick time. When this charge subsequently appeared baseless, other explanations ensued, such as: the failure to report Stevens’ rule violation; the acts tending to discredit the Sheriffs Department charge; and finally, the bare assertion that complainant was an employee at will and could be dismissed for any reason.
 

 The Commissioner could reasonably have found these three explanations to be either pretextual or affected by discrimination. Initially, shifting responses alone, especially where the first proffered explanation proves baseless, may give rise to an inference that the later justifications are pretextual.
 

 Turning specifically to the explanations offered by the Sheriffs Department, the first justification of complainant’s failure to report a coemployee’s rules violation was never shown to be a Sheriffs Department rule, and was never shown to have been applied to anyone except complainant in this one instance. The next justification, that complainant’s act tended to discredit the Sheriffs Department, seen in its best light, could have been found to be pretextual because only complainant and not Stevens was ever charged with it — or, more harshly, and as found by the Commissioner, it could be seen as a blatantly improper assertion that a white woman’s relationship with a black man tends to bring discredit upon her employer.
 

 Finally, the belated employee "at will” justification for complainant’s discharge was wholly belied by the record, from which it is clear that complainant’s dismissal was the direct result of the incident involving Deputy Stevens. Consequently, the record in this case sufficiently supports the Commissioner’s finding of discrimination against complainant; he properly found a prima facie case of discrimination, and that the Sheriff’s Department’s purported neutral justifications for the action taken were pretextual.
 

 
 *633
 
 In a separate argument, the Sheriffs Department asserts that, even if discrimination occurred, it is insulated by our decisions in
 
 Matter of Totem Taxi v State Human Rights Appeal Bd.
 
 (65 NY2d 300), and
 
 Matter of State Div. of Human Rights (Greene) v St. Elizabeth’s Hosp.
 
 (66 NY2d 684), holding that, under the facts of those cases, the employer was not liable for the employee’s discriminatory act unless the employer became a party to it by encouraging, condoning or approving the act. This argument stems from the appearance in the record of a statement by one employee, not the Sheriff, made on April 26, 1979, that "[complainant] is all done * * * we just caught her with John Stevens,” along with the statement of another Sheriffs Department employee urging complainant to resign before she was fired so as not to bring shame upon her family by disclosure of her relationship with a black man.
 

 This argument has no merit here.
 
 *
 
 Unlike
 
 Totem Taxi (supra),
 
 and
 
 St. Elizabeth’s Hosp. (supra),
 
 in the case now before us conduct directly attributable to the employer formed the core of the discriminatory acts. Here it was the employer —the Sheriff — who personally discharged complainant from employment, who personally participated in the disparate treatment of complainant and Deputy Stevens, and who personally offered the justifications for complainant’s termination, rejected as pretextual by the Commissioner. This case, therefore, does not involve vicarious liability; on the contrary, here the employer was held liable under the Human Rights Law for his own discriminatory conduct.
 

 II
 

 Finally, the Sheriffs Department takes issue with the remedy imposed by the Commissioner. It asserts that under
 
 Matter of City of Schenectady v State Div. of Human Rights (supra),
 
 the Commissioner was without power to order that the Sheriffs Department offer complainant reemployment because this would deprive the Sheriff of his discretion in making appointments. The Commissioner, however, has broad powers to form a remedy for discrimination, with the limitation, of course, that the remedy be reasonably related to the
 
 *634
 
 injury to be rectified
 
 (e.g., Imperial Diner v State Human Rights Appeal Bd., supra,
 
 at 79). In fact, the power to order reinstatement — the remedy invoked here — is specifically granted to the Commissioner in the Human Rights Law (Executive Law § 297 [4] [c]).
 

 City of Schenectady (supra),
 
 and the case upon which it is based,
 
 Matter of Berger v Walsh
 
 (291 NY 220), place no additional limitations on the Commissioner’s power to fashion a remedy for discrimination. These cases hold that where a person has not been considered fairly for an appointment by a public employer, the remedy that generally will make the individual whole, in addition to whatever money damages are warranted, is that the individual be fairly considered for the appointment. These cases recognize that it may be improper to go further and require that the person be appointed to the position because this could award more than a complainant was entitled to before the discrimination took place. On this point, therefore, the authorities cited are nothing more than a restatement that the remedy imposed by the Commissioner must be rationally related to the injury sought to be redressed.
 

 Conversely, when the discrimination resulted in termination, compelling reappointment does not put the employee in a better position than the employee had before the discrimination occurred; it only returns to the employee something that he or she at all times possessed, but was deprived of by discrimination. To hold otherwise, and to preclude the Commissioner from ordering reinstatement, would allow public officials to discriminate with impunity, leaving unlawfully discharged employees no recourse for reinstatement to employment. This result, at odds with both the purpose of the Human Rights Law and the duty of the Commissioner to make whole those victimized by discrimination, cannot be accepted by this court. Thus in the case now before us, we hold that the Commissioner acted within his discretion when he ordered that complainant, who was wrongfully terminated from her position, be offered reinstatement to her position as a Deputy Sheriff.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 *
 

 Consequently, although urged by
 
 amicus,
 
 there is no call in this case for a reexamination of our holdings in
 
 Matter of Totem Taxi v State Div. of Human Rights
 
 (65 NY2d 300), and
 
 Matter of State Div. of Human Rights (Greene) v St. Elizabeth’s Hosp.
 
 (66 NY2d 684).