■ In the Matter of GENNARA GARRISON, Appellant, v RICHARD KOEHLER, as Correction Commissioner of the City of New York, et al., Respondents.—Judgment of the Supreme Court, New York County (Edward H. Lehner, J.), entered on or about April 17, 1989, which dismissed petitioner's petition pursuant to CPLR article 78 challenging her termination as a probationary correction officer, is unanimously reversed on the law and the petition granted to the extent of remanding the matter for a hearing, without costs and disbursements.

Petitioner was a probationary correction officer between November 12, 1987 and September 23, 1988 when she was notified that her services had been terminated. Due to her probationary status, no hearing, or, indeed, no explanation for her release, was provided but she believes that the reason for the termination was two separate incidents which occurred on June 26, 1988 and July 17, 1988 in connection with which two disciplinary reports were prepared by male captains who, it is alleged, acted purely on the basis of sex discrimination. There were apparently no other admonitions lodged against her, nor was she ever furnished with regular assessments of her performance notwithstanding that the Department of Correction's internal policy required periodic evaluation reports. On each of the two occasions in question, petitioner purportedly requested that an investigation be conducted but the Department, she claims, failed to take any action. Rather, as a consequence of the two negative disciplinary reports, which

she was not accorded any opportunity to dispute, she was summarily discharged from her position.

Petitioner asserts that the fact that she is an attractive, petite and articulate person is an important consideration in determining whether the captains involved in the two events behaved in a sexually discriminatory manner. According to petitioner, in the first instance, she was approached by an inmate, Lynette Binyard, who asked that the gate be opened so that she could leave the lunch area earlier than the other inmates from her dormitory. When petitioner refused to oblige, Binyard brought over Captain Jaime Lao. The inmate, in a signed statement, states that she was fondling Captain Lao's arm as she spoke with him and that he stroked her leg. The captain ordered petitioner to unlock the gate and allow the prisoner to pass. Aware that it was against the Department's rules to permit the inmate through without escort, she handed the keys to the captain and walked away. Petitioner thereafter submitted an incident report concerning her confrontation with Captain Lao; the inmate also prepared a written statement about this matter. Charges were filed against petitioner by Captain Lao as a result of the episode.

It is further alleged by petitioner that approximately three weeks later, a group of inmates were being returned to their cells under the supervision of Captain Brooks. In an effort to assist superior officers in calming the prisoners, who admitted in writing to having been out of control, petitioner became engaged in a minor altercation with one of the inmates. Although Captain Brooks called over to her, petitioner, not having heard her superior due to the noisy scene, did not immediately respond. Captain Brooks thereupon approached her and, grabbing her roughly by the collar, thrust her against the wall. He then berated her loudly in front of the inmates and threatened to press charges against her for insubordination. In addition, he advised her to submit an incident report. It should be noted that 32 inmates subsequently signed a written statement in support of petitioner, including the prisoner with whom she had been scuffling, and the inmates who witnessed the incident filed a separate grievance over Captain Brooks' conduct.

The law is established that "a probationary employee may be discharged without a hearing and without a statement of reasons in the absence of any demonstration that dismissal was for a constitutionally impermissible purpose or in violation of statutory or decisional law" (*Matter of York v McGuire*, 63 NY2d 760, 761; *see also, Matter of State Div. of Human*

*Rights v County of Onondaga Sheriff's Dept.*, 71 NY2d 623; *Matter of Bergamini v Manhattan & Bronx Surface Tr. Operating Auth.*, 62 NY2d 897; *Matter of Stanziale v Executive Dept.*, 55 NY2d 735; *Matter of Talamo v Murphy*, 38 NY2d 637). Therefore, judicial review of an agency's decision to terminate a probationary employee is limited to ascertaining whether the action was taken in bad faith *(Matter of Johnson v Katz*, 68 NY2d 649, 650). Although the burden is upon petitioner to demonstrate that the termination was in bad faith—that is, that it violated constitutional, statutory or contractual mandates *(Matter of Bergamini v Manhattan & Bronx Surface Tr. Operating Auth., supra)*, petitioner herein has certainly raised sufficient factual allegations, evidently uncontradicted in respondents' papers, to show that her discharge may well be attributable to sex discrimination and/or other bad faith. In that regard, the circumstances surrounding the two episodes for which disciplinary reports were made against petitioner do not indicate any objective bases for her purported insubordination but, rather, seem from a cursory examination to constitute nothing more than an appropriate attempt by her to perform responsibly her duties. In any event, petitioner is clearly entitled to a hearing before the Department of Correction so that she can be accorded an opportunity to question witnesses and more thoroughly establish the facts concerning her discharge and be provided with reasons for any actions taken by respondents with respect to her employment. Concur—Murphy, P. J., Sullivan, Carro, Milonas and Smith, JJ.