■ In the Matter of NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.—Kane, J. Proceeding pursuant to Executive Law § 298 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Division of Human Rights which found petitioner guilty of an unlawful discriminatory practice relating to employment.

Respondent Peter Ramos (hereinafter respondent) was employed as a research scientist by the Institute for Basic Research in Developmental Disabilities (hereinafter IBR), a research facility under the jurisdiction of petitioner (see, Mental Hygiene Law § 13.17). Beginning in 1980, respondent began suffering from coronary heart problems and was subsequently diagnosed in June 1982 as requiring coronary bypass surgery. Respondent suffered his first heart attack in July 1982 and underwent double bypass surgery shortly thereafter. In late September 1982, respondent suffered a second heart attack and was hospitalized until October 8, 1982. Respondent was thereafter given approval by his personal physician to return to work as an electron microscopist on February 14, 1983. Prior to returning, however, and at the request of IBR, respondent was examined in early February 1983 by Dr. Antero Lacot, Regional Medical Director of the Department of Civil Services' Employee Health Service. Lacot initially found respondent capable of returning to work, given respondent's characterization of his job as sedentary in nature. Shortly thereafter, however, on February 18, 1983 Henry Wisniewski, Director of IBR, informed Lacot that respondent's job responsibilities required "moving from location to location at least 70% of the time" and that the heavy workload involved a "significant amount of pressure". Given this new information,

Lacot reversed his initial determination and, on February 25, 1983, found respondent "unable to perform his duties".

On March 11, 1983, respondent filed a complaint with respondent State Division of Human Rights (hereinafter SDHR), alleging that IBR, *inter alia,* unlawfully discriminated against him by refusing to reinstate him because of his coronary disability. A protracted hearing was held involving numerous sessions and extending from January 1984 until May 1987, after which SDHR found that IBR discriminated against respondent by refusing to rehire him on the basis of a disability which did not prevent him from performing his duties in a reasonable manner. SDHR ordered, *inter alia,* IBR to offer respondent the next available opening at his position, as well as back salary plus $75,000 as damages for "mental anguish and humiliation". Petitioner subsequently commenced this CPLR article 78 proceeding challenging that determination.

The Human Rights Law prohibits employers from discriminating against employees because of a disability *(see,* Executive Law § 296) and a finding of discrimination by SDHR is to be confirmed if supported by substantial evidence in the record *(see, Matter of State Div. of Human Rights [Granelle],* 70 NY2d 100, 106). The term "disability" as defined in the Human Rights Law means "a physical mental or medical impairment * * * which do[es] not prevent the complainant from performing in a reasonable manner the activities involved in the job" (Executive Law § 292 [21]). Unless it is shown that the employee's physical condition precludes him from being reasonably able to do what the position requires, the disability is irrelevant to the job and can form no basis for denying him the position *(Matter of Miller v Ravitch,* 60 NY2d 527, 532).

Significantly, it is IBR's refusal to rehire respondent which constitutes the alleged discriminatory act *(see,* Executive Law § 296 [1] [a]; *State Div. of Human Rights v Xerox Corp.,* 73 AD2d 806, 807; *Matter of Gamble v State Human Rights Appeal Bd.,* 71 AD2d 165, 167, *lv denied* 50 NY2d 801). Thus, only evidence regarding the nature of respondent's disability and its relationship to his ability to reasonably do what the position requires, *at the time* IBR refused to rehire him, is relevant. To this end, respondent submitted at the hearing laconic notes from his personal physician, written on a prescription pad, stating, *inter alia,* that respondent was "feeling much improved" and indicating that he could return to work. The record demonstrates, however, that respondent's personal

physician was not aware of the particular work conditions under which respondent would return, having been misinformed by respondent that an electron microscopist "sits on his butt all the time". Respondent also submitted testimony from Dr. Richard Devereux, a cardiologist who examined respondent and found him capable of performing the duties of the job despite the stressful nature of the work. However, Devereux's examination of respondent took place two years after IBR's refusal to rehire. IBR, on the other hand, submitted detailed testimony from Lacot, the only physician who had examined respondent at the time of his attempted return to work and was fully aware of the particular requirements of the job. Thus, Lacot had formulated "an informed medical opinion as to the physical ability of the applicant to perform the work" *(Matter of Bayport-Blue Point School Dist. v State Div. of Human Rights,* 131 AD2d 849, 850; *see, Matter of Gamble v State Human Rights Appeal Bd.,* 71 AD2d 165, 169, supra).* Lacot's testimony, then, is the only medical evidence in the record relevant to the issue of the relationship between respondent's physical condition *at the time* he sought to return to work *and* the specific responsibilities involved in the work respondent sought to resume. Since Lacot determined that respondent was unable to perform his duties because of his disability, the record lacks substantial evidence to support a finding that IBR discriminated against respondent in refusing to rehire him *(cf., Matter of Gamble v State Human Rights Appeal Bd., supra).* Accordingly, SDHR's determination cannot stand.

Determination annulled, without costs, petition granted and complaint dismissed. Kane, Weiss and Harvey, JJ., concur.

Mahoney, P. J., and Levine, J., dissent in a memorandum by Mahoney, P. J. Mahoney, P. J. (dissenting). We respectfully dissent. Dr. Antero Lacot, upon whose medical report the majority relies, was not a cardiologist, had no special training in cardiology and did not perform an exhaustive examination of respondent Peter Ramos (hereinafter respondent). For example, no stress test was performed on respondent. On the other hand, Dr. Richard Devereux, a cardiologist who performed an extensive examination of respondent, reported that respondent would have no difficulty discharging the duties of his employment, notwithstanding "the physical demands, and the emotional stresses described by Dr. [Henry] Wisniewski in the performance of his usual duties". Although these findings were made in 1985 when the examination was performed, they logically reflect respondent's health at the pertinent time

when considered with evidence that respondent's personal physician placed no limitations on respondent's activities following his recovery. It also is noteworthy that the Administrative Law Judge conducted an inspection of the premises where respondent's work would have been performed and found no physical impediments. Considering the differences in the doctors' qualifications and the examinations performed, and cognizant of respondent State Division of Human Rights' authority to choose from competing evidentiary submissions *(see, Matter of New York City Bd. of Educ. v Batista,* 54 NY2d 379, 384), we would conclude that the determination, founded on Devereux's report and substantiated by the other evidentiary matters noted, is rationally based and supported by substantial evidence; therefore, it should be upheld *(see, Matter of State Div. of Human Rights v County of Onondaga Sheriff's Dept.,* 71 NY2d 623, 631).

Although the record provides evidence supporting the view that respondent suffered mental anguish and humiliation for which compensatory damages should be awarded *(see,* Executive Law § 297 [4] [c] [iii]; *Cullen v Nassau County Civ. Serv. Commn.,* 53 NY2d 492, 496), we cannot subscribe to $75,000 as the appropriate amount of damages. In the absence of any evidence of medical treatment as a result of the incident or physical manifestations of respondent's mental anguish, we believe that an award of $7,500 would be more appropriate *(see, Matter of Moore v State Div. of Human Rights,* 154 AD2d 823, 824).