# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 2
In the Matter of Clifton Park
Apartments, LLC, &c., et al.,
　　　Respondents,
　　v.
New York State Division of Human
Rights,
　　　Appellant,
et al.,
　　　Respondents.
(And Another Related Proceeding.)

Toni Ann Hollifield, for appellant.
Michael J. Hutter, for respondents Clifton Park Apartments, LLC et al.

SINGAS, J.:

The New York State Human Rights Law prohibits retaliation against those who make discrimination complaints or engage in other protected activity. We hold that a threat of litigation may constitute the requisite adverse action to support a retaliation claim and,

- 1 -

therefore, respondent New York State Division of Human Rights (DHR) rationally concluded that this element had been established here.  Remittal is necessary, however, because, as the parties agree, DHR improperly shifted the burden when analyzing whether respondent CityVision Services, Inc. (CityVision) had engaged in protected activity.

I.

CityVision is a Texas-based not-for-profit corporation which tests whether housing facilities engage in discrimination by having their agents pose as prospective tenants.  In 2016, respondent Leigh Renner, a CityVision employee, placed a test call to petitioner Clifton Park Apartments, LLC, as owner of Pine Ridge II Apartments (Pine Ridge)—a housing facility located in New York—purportedly seeking to rent an apartment. Following that call, CityVision filed a complaint with DHR, alleging that Pine Ridge had discriminated against Renner based on her familial status in violation of the Human Rights Law (*see* Executive Law § 296 [5] [a] [1]).  CityVision maintained that Pine Ridge steered Renner to a different apartment complex after discovering that she intended to reside in the apartment with her children.

DHR investigated CityVision's complaint and dismissed it, concluding that there was no probable cause to support a finding that Pine Ridge engaged in familial status discrimination.  Following DHR's determination, Pine Ridge's attorney, petitioner David H. Pentkowski, Esq., sent a letter to CityVision and Renner on Pine Ridge's behalf.  The letter stated that Pine Ridge considered the allegations in CityVision's DHR complaint to be "false, fraudulent and libelous."  The letter explained that Pine Ridge was "looking to" CityVision and Renner "personally for the damages that" Pine Ridge "sustained as a result

of this wrongful conduct." The letter concluded by stating that if CityVision and Renner did not respond within a stated period, Pine Ridge would "assume that" they did "not intend to take responsibility for these actions and [would] proceed accordingly." In response, CityVision and Renner filed a second complaint, alleging that Pine Ridge and Pentkowski retaliated against them for filing the first discrimination complaint. CityVision and Renner claimed that Pine Ridge and Pentkowski sent the letter to intimidate them and, thus, interfere with their protected rights.

A public hearing ensued before an administrative law judge (ALJ). A CityVision employee testified that CityVision's staff was "shocked" when they received Pentkowski's letter, and "had to scramble around . . . to locate counsel," thereby diverting resources in response to the letter. The ALJ recommended a finding of unlawful retaliation, a damages award payable to CityVision, and a civil fine. Concerning the first element of the retaliation claim, the ALJ placed the burden on Pine Ridge and Pentkowski to show that CityVision's initial discrimination complaint was "made in bad faith," and concluded that they failed to meet that burden. The ALJ further determined that Pentkowski's letter was retaliatory and threatening because it sought damages from CityVision and Renner for filing the initial complaint. DHR adopted the ALJ's recommendation as its final order, amending it only to award CityVision attorney's fees.

Pine Ridge and Pentkowski then commenced this Executive Law § 298 proceeding to annul DHR's determination. DHR cross-petitioned to enforce its determination and to transfer the matter to the Appellate Division.

Upon transfer from Supreme Court, the Appellate Division annulled the determination and granted the petition (*see* 204 AD3d 1358, 1361 [3d Dept 2022]). Concerning the first element of the retaliation claim, the Court concluded that the ALJ and DHR "improperly shifted the burden" to Pine Ridge and Pentkowski "to prove, in the first instance, that CityVision did not hold a reasonable belief that Pine Ridge was engaging in housing discrimination" (*id.* at 1360). The Court did not remit the matter to DHR for further proceedings, however, because "[t]he hearing evidence failed to support the finding that" Pine Ridge and Pentkowski "took adverse action against CityVision, under the third prong of the test for retaliation" (*id.*). The Court held that the "retaliation complaint must be dismissed" because it could not conclude that "the mere sending of the letter rose to the level of retaliation" (*id.* at 1360-1361). We granted DHR leave to appeal (*see* 39 NY3d 904 [2022]), and now reverse the Appellate Division's judgment and remit the matter for further proceedings.

## II.

The Human Rights Law (Executive Law article 15) makes it "unlawful to retaliate against" a person "for opposing discriminatory practices" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 312 [2004]). More specifically, Executive Law § 296 (7) states:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [they have] opposed any practices forbidden under this article or because [they have] filed a complaint, testified or assisted in any proceeding under this article."

The parties do not dispute that the retaliation claim before us should be "analyzed under the same burden-shifting framework established for" other discrimination cases (*Treglia v Town of Manlius*, 313 F3d 713, 719 [2d Cir 2002]).  Under this approach, a plaintiff bears the burden to establish a prima facie retaliation claim (*see Forrest*, 3 NY3d at 312-313).  To meet that burden, the plaintiff must show that (1) they have "engaged in protected activity," (2) the defendant "was aware that" the plaintiff "participated in" the protected activity, (3) the plaintiff suffered adverse action based upon the activity, and (4) "there is a causal connection between the protected activity and the adverse action" (*id.*).  Only the first and third elements of CityVision's retaliation claim are at issue here.

We address the third element of the retaliation claim first.  In *Burlington N. & S. F. R. Co. v White* (548 US 53 [2006]), the Supreme Court considered the antiretaliation provision of title VII of the Civil Rights Act of 1964 (*see* 42 USC § 2000e-3 [a]), which relates to employment discrimination.  The Supreme Court concluded that the adverse action element is satisfied when "a reasonable employee would have found the challenged action materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (*Burlington*, 548 US at 68 [internal quotation marks omitted]).  If a plaintiff meets this objective standard, the adverse action element is satisfied.  The Supreme Court adopted this test to effectuate the intent of the antiretaliation provision—to protect an individual "from retaliation that produces an injury or harm" while "[m]aintaining unfettered access to statutory remedial mechanisms" (*Burlington*, 548 US at 64, 67 [internal citation omitted]).  The Court recognized that antidiscrimination statutes "depend[ ] for [their] enforcement upon the cooperation of

[those] who are willing to file complaints and act as witnesses" and interpreting antiretaliation provisions "to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment" of their "primary objective depends" (*id.* at 67; *see Crawford v Metropolitan Government of Nashville and Davidson Cty.*, 555 US 271, 279 [2009]).

Neither party disputes that *Burlington* provides the appropriate standard for assessing adverse action under the Human Rights Law. Applying that test, the Appellate Division erred by concluding that there was insufficient evidence that Pine Ridge and Pentkowski took adverse action against CityVision and Renner based on the initial complaint. We reject the notion that the letter could not amount to adverse action as a matter of law. Instead, determining whether a threat of litigation amounts to adverse action is properly left to a fact-specific determination (*see e.g. Hollandale Apts. & Health Club, LLC v Bonesteel*, 173 AD3d 55, 69 [3d Dept 2019] [eviction threats "may constitute adverse actions . . . , even when the eviction is never carried out"]; *cf. Moran v Simpson*, 80 Misc 2d 437, 438 [Sup Ct, Livingston County 1974] [concluding that the commencement of a libel lawsuit in response to a complaint under the Human Rights Law was an adverse action]). A per se rule precluding litigation threats from constituting adverse action would impermissibly restrict New York's antiretaliation statute (*see* Executive Law § 296 [7]) in violation of the legislative directive to construe the Human Rights Law liberally to eliminate discrimination in this State (*see id.* § 300).

Having rejected the per se rule, our review of DHR's analysis concerning whether CityVision and Renner satisfied the adverse action element is limited. When reviewing

DHR's "findings on the presence of unlawful discrimination," this Court "may not weigh the evidence or reject" DHR's "choice where the evidence is conflicting and room for a choice exists" (*Matter of State Div. of Human Rights v County of Onondaga Sheriff's Dept.*, 71 NY2d 623, 631 [1988] [internal quotation marks omitted]; *see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 331 [2003]). Instead, "the judicial function is concluded when it is determined that" DHR's "determination is supported by substantial evidence on the record" (*County of Onondaga Sheriff's Dept.*, 71 NY2d at 631; *see* Executive Law § 298). "Put a bit differently, the reviewing court should review the whole record to determine whether there is a rational basis in it for the findings of fact supporting the agency's decision" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 182 [1978] [internal quotation marks omitted]). On judicial review, DHR's determinations are "accorded substantial deference when" it "acts within [its] area of expertness," and we have recognized that "identifying discriminatory acts . . . requires expertness" (*County of Onondaga Sheriff's Dept.*, 71 NY2d at 630; *see 300 Gramatan Ave. Assoc.*, 45 NY2d at 183).

Here, DHR concluded that Pentkowski's letter threatened litigation and that such threats could have dissuaded a reasonable person from bringing the original discrimination charge. Initially, DHR rationally concluded that the letter threatened litigation. The letter specifically stated that Pine Ridge was looking to CityVision and Renner for damages and warned that Pine Ridge would proceed as necessary to obtain such damages.

Further, the record established that Pentkowski's letter "shocked" CityVision's employees and forced CityVision to expend resources and "scramble . . . to locate counsel"

to address the threat.  In the circumstances presented, it was rational for DHR to conclude that the threatening letter caused CityVision to divert resources and could have dissuaded a person from pursuing a discrimination claim to protect their rights under the Human Rights Law.  Indeed, a potential plaintiff might be chilled from filing a discrimination complaint when weighing the harm caused by the threat of retaliatory litigation, let alone the injury potentially occasioned by actual retaliatory litigation.  DHR's determination that the litigation threat amounted to adverse action in this case was rational and, thus, supported by substantial evidence.

We turn to the first element of the retaliation claim.  Although we have never adopted the "reasonable belief" standard (*see Matter of Mohawk Finishing Prods. v State Div. of Human Rights*, 57 NY2d 892, 893-894 [1982]), and do not do so here because the parties agree that it applies, Appellate Division and DHR precedent requires CityVision and Renner to demonstrate that they were engaged in protected activity by showing that the initial complaint was based on a reasonable belief that Pine Ridge had engaged in unlawful housing discrimination (*see Matter of New York State Off. of Mental Retardation & Dev. Disabilities [Staten Is. Dev. Ctr.] v New York State Div. of Human Rights*, 164 AD2d 208, 210 [3d Dept 1990]; *State Div. of Human Rights v GPA Dev. Corp.*, NYS DHR Case Nos. 10122321 and 10122322 [Feb. 1, 2012] [available at 2011 NYHUM LEXIS 16, *20]).  DHR therefore erred by putting the burden on Pine Ridge and Pentkowski to show that the allegations advanced by CityVision in the initial DHR complaint were made in bad faith.  As the Appellate Division concluded, DHR failed to "undertake any analysis as to whether CityVision reasonably believed that Pine Ridge" had engaged in a discriminatory

practice during the test call (204 AD3d at 1360). Because DHR failed to make any non-conclusory factual findings on this issue, remittal is necessary so that DHR may determine whether CityVision and Renner established the first element of the retaliation claim.

Accordingly, the judgment should be reversed, with costs, and the matter remitted to the Appellate Division with directions to remand to DHR for further proceedings in accordance with this opinion.

Judgment reversed, with costs, and matter remitted to the Appellate Division, Third Department, with directions to remand to the New York State Division of Human Rights for further proceedings in accordance with the opinion herein. Opinion by Judge Singas. Chief Judge Wilson and Judges Rivera, Garcia, Cannataro, Troutman and Halligan concur.

Decided February 15, 2024