Cooke, J.
The question in issue on this appeal is whether there was substantial evidence to sustain the determination of the Commissioner of the State Division of Human Rights, as to discriminatory action by respondents City of Schenectady, the City of Schenectady Department of Police and the Chief of Police thereof. The complainant, a woman, had the right to be considered for appointment to the position of police sergeant and could not be denied consideration because of her sex.
Article 15 of the Executive Law, under the heading of the Human Rights Law, is deemed "an exercise of the police power of the state for the protection of the public welfare, health and peace of the people of this state” (Executive Law, § 290, subd 2). The Legislature therein found and declared that the State "has the responsibility to act to assure that every individual within this state is afforded an equal opportu *424 nity to enjoy a full and productive life” (Executive Law, § 290, subd 3), and equal opportunity for employment is basic to that enjoyment (State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 207). Section 296 thereof provides, in pertinent part, that "1. It shall be an unlawful discriminatory practice: (a) For an employer, because of the * * * sex * * * of any individual, to refuse to hire or employ or to bar * * * from employment such individual or to discriminate against such individual in * * * terms, conditions or privileges of employment.”
After notice and hearing, the Commissioner of the State Division of Human Rights determined and found that the City of Schenectady, its Department of Police and the Chief of Police thereof committed unlawful discriminatory practices against complainant Eva S. Hawkins "by denying her an opportunity to become a Police Sergeant and by denying her the opportunity to transfer from one assignment to another because of her sex”, in violation of the Human Rights Law (see Executive Law, § 297, subd 4, par c). The city and its Police Department and chief were ordered to offer to complainant the next available position of police sergeant and to pay to her as compensatory damages from August 3, 1971, the date complainant was certified by the Schenectady County Civil Service Commission, to the date said position is offered to her, the difference between her salary as a policewoman and what she would have earned had she been appointed a police sergeant. The record demonstrates that the State Human Rights Appeal Board had the right, as it did, to affirm the Division’s findings of discrimination and to rule that they were supported by substantial evidence on the whole record (Executive Law, § 297-a, subd 7). Since said findings of fact, on which the order of the Appeal Board is based, are supported by sufficient evidence on the record as a whole, they are conclusive (Executive Law, § 298) and should not have been disturbed. In making those findings, it was not necessary that the commissioner detail all items of evidence (see Matter of Dusinberre v Noyes, 284 NY 304, 308; Matter of Scudder v O’Connell, 272 App Div 251, 253-254; 146 ALR 209, 229).
As the result of passing an examination (at the top of the list), complainant was appointed in 1956 as a Meter Attendant of the City of Schenectady, in which position she served for about seven months, mainly tagging cars for parking violations. After taking, passing and receiving the highest mark on *425 a civil service examination for city policewoman, she was appointed to said position in 1957 and assigned to the Youth Aid Bureau. In said post, she investigated possible cases of neglect, patrolled areas of likely delinquency, went to court, referred matters to agencies, served warrants, was detailed to strike duty, ran spot checks of bars and worked day and night shifts.
In May, 1967, complainant took a civil service examination for the position of police sergeant, finishing as number eight, and, based on said test, a list was established on August 17, 1967. The list did not expire until four years later, extensions having been granted, and by July of 1971 complainant ranked third on the list. Officers Nelson and Small, both men, then ranked first and second respectively. The announcement for the 1967 promotional examination for police sergeant had listed at least four years service as a police patrolman as a minimum qualification, but the Schenectady County Civil Service Commission deemed that complainant had equivalent experience and could take the exam.
In 1971 complainant was certified eligible for appointment to the position of police sergeant and she and the two others certified appeared before an Oral Review Board. This board was established pursuant to a labor relations contract between the city and the Schenectady Patrolmen’s Benevolent Association which provided that it be made up of "three (3) disinterested persons, not residents of the City, one of whom shall be an expert in the field, who will examine the qualifications of the ranking applicants” and that it recommend to the city manager the name of the applicant, in its opinion best qualified, said recommendation being advisory. It also provided that in determining preference, for the purpose of promotions, seniority within rank shall control, all other conditions being equal. The review board at the time in question consisted of Chief Flater, Chief of the Town of Colonie Police Department, the head of an advertising agency and the third member, a bank official or postmaster. Chief Flater was the member considered as the expert in police work. When complainant appeared before the review board, no questions were asked of her about police work as such, but inquiries were made as to how her husband and son felt about her being a policewoman and as to whether she was afraid. Chief Flater stated that she was an excellent investigator, that it was too bad there were not any promotions within the Youth Aid Bureau, and that *426 with her ability and knowledge she was certainly entitled to be a sergeant "but you know, its just too bad there weren’t any openings.” The Oral Review Board then recommended the appointment of Officer Nelson, who passed the written examination with a higher mark, but who possessed less seniority within the Police Department than complainant.
Later, Chief Plater told a representative of the Division of Human Rights that "she [complainant] was extremely capable in her work; but the job in question was a Police Sergeant’s job and he did not feel Investigator Hawkins should be a police sergeant because of the fact that she is a female.” Plater also stated that, even with her qualifications, he would not pick her for said position over a man. He told complainant that it was too bad she was a woman. In the administrative hearing (see Matter of Brown v Ristich, 36 NY2d 183, 189-190; Matter of Sowa v Looney, 23 NY2d 329, 333), the representative testified on cross-examination that, after interviewing the Schenectady City Manager, Chief of Police, a Lieutenant De Luca and others, he reported to a superior that "it was their consensus that because she [complainant] was a female she couldn’t be used in barroom brawls, riots, strifes, domestic strifes, rescue work, suicide attempts, escorting prisoners to jail or court.”
Complainant is one of only two female police officers employed on the Schenectady police force, both of whom are assigned exclusively to the Youth Aid Bureau. Although service as a patrolman was listed as a requirement for promotion to a sergeancy, a woman would not have been admitted to a patrolmen’s examination. There are no positions known as policewoman sergeant in the City of Schenectady.
The second instance of alleged discrimination took place on September 9, 1971, when complainant was passed over for two assignment vacancies for "Patrolmen for general patrol duty.” Patrolmen interested had been asked to sign a bid sheet and the two males selected had less seniority than complainant, although the labor relations contract recited that the city was in accord with the principle that seniority should be a major factor in filling work assignments by superior officers, provided that, all other conditions being equal, the employee is fully qualified to perform the duties required. Responding to complainant’s "Request for Information”, the chief of police wrote that, in view of the general statement of duties listed for "Police Patrolman” and "Policewoman”, "in . my opinion it *427 is not a question of any special qualifications. It is quite apparent that the position for which you were employed and the position of Police Patrolman are, to a very large degree, completely different.” About a month and a half previously, however, the chief had issued a directive making certain organizational changes in the Schenectady Police Department. Provision was made for the Investigation Division with three sections: Detective, Juvenile and Special Service. The directive stated: "All personnel of each section * * * shall be interchangeable within the division. At the discretion of the division commander, with the approval of the Chief and Assistant Chief of Police, personnel may be reassigned within the section when the need so dictates.”
"Discrimination today is rarely so obvious, or its practices so overt that recognition of the fact is instant and conclusive” (State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 209, supra ). Clearly, there was substantial evidence on the record as a whole to sustain the findings of the State Division of Human Rights. In regard to the denial of an opportunity to become a police sergeant, this could be found in the irrelevant inquiries made of complainant when she appeared before the Oral Review Board, the relevant questions which were not placed before her, the indicative statements made to her on that occasion, the requirement of service as a patrolman for promotion as a police sergeant, and the revealing comments made by the expert on the board, the city manager and the chief of police to a division investigator. In respect to denial of the opportunity to transfer to another assignment, the assignment was on a bid basis, the labor relations contract stated that the city was in accord with the principle that seniority was to be a major factor in filling assignments, the males selected had less seniority than complainant, the chief of police responded that it was not a question of special qualifications but that complainant’s position as policewoman and that of police patrolman were to a large degree completely different, and there was a previous directive of the chief that all personnel of each section shall be interchangeable within the division.
The argument of respondents that the Oral Review Board, in its review of the candidates for police sergeant, "by its very nature and contractual experience, was independent of the City and the Police Department” and that, therefore, any discrimination of the board cannot be attributed to respon *428 dents is not sound. The labor relations contract, to which the city was a party, established the board as part of the method for appointment. The city appointed its members and the agreement provided that "such recommendation [of the board] shall be advisory, but failure to accept the same * * * shall be the basis for a grievance.” It is declared policy of the State to afford every individual within this State "an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity * * * because of discrimination * * * not only threatens the rights and proper privilege of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants” (Executive Law, § 290; Board of Educ. of Tuxedo Union Free School Dist. No. 3 v State Div. of Human Rights, 68 Misc 2d 1035, 1037; cf. Matter of Board of Higher Educ. of City N. Y. v Carter, 14 NY2d 138, 145). The Human Rights Law declares that it is an unlawful discriminatory practice for "an employer, because of * * * sex * * * of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment” (Executive Law, § 296, subd 1, par [a]; see Board of Educ. of Union Free School Dist. No. 2, East Williston, Town of North Hempstead v New York State Div. of Human Rights, 42 AD2d 49, 52). Since the statute is to be "construed liberally for the accomplishment of the purposes thereof’ (Executive Law, § 300), the City of Schenectady should not be permitted to avoid responsibility for discriminatory acts of persons appointed by it and under a procedure which it itself established, pursuant to the labor relations agreement. Sexual discrimination in employment being deplorable, it is the duty of courts to make sure that the Human Rights Law works and that the intent of the Legislature is not thwarted by a combination of strict construction of the statute and a battle with semantics (cf. Culpepper v Reynolds Metals Co., 421 F2d 888, 891). The proof justified the conclusion that the promotion selective process was influenced by unlawful sex discrimination, and the imputation of these considerations to the city is necessary if the Human Rights Law is to have meaning.
The city urges that, since the State Division of Human Rights dismissed the complaint against the city manager, "by *429 its very nature” it amounted to a dismissal against the petitioners-respondents. It cites Matter of New York Stock Exch. v New York State Div. of Human Rights (37 AD2d 941) but, there, the court held that, where there is no evidence of discrimination and the employment application contains misstatements of fact which form the basis of rejection of the application for employment, there can be no finding of discrimination and that, under the circumstances, the board’s finding of discrimination was not supported by sufficient evidence. Here, to the contrary and as outlined, there was substantial evidence of discrimination and, hence, a different result is appropriate.
The city claims that, at the time of the oral examination, complainant did not meet the minimum qualification of having served on a permanent basis in the competitive class as a police patrolman, which was a bona fide job qualification for promotion. However, complainant had been permitted to take the written test and appear before the review board, the Schenectady County Civil Service Department having found that she had the equivalency of four years’ permanent service as a police patrolman, and the male officer who received the appointment as sergeant had been assigned as an investigator in the Youth Aid Bureau at the same time as complainant and continued to serve in that capacity until his promotion. Thus, although complainant was a policewoman and not a police patrolman, the work assignment of the appointee and complainant from 1966 to the date of appointment was the same. This court has held that, when a hiring standard adversely affects equal employment opportunity for a protected class of persons, judicial scrutiny is warranted and it is incumbent upon the employer to show that the standard bears a rational relationship to and is a valid predictor of employee job performance and that it does not create an arbitrary, artificial and unnecessary barrier to employment, operating invidiously to discriminate on the basis of an impermissible classification (Matter of Sontag v Bronstein, 33 NY2d 197, 201; New York State Div. of Human Rights v New York-Pennsylvania Professional Baseball League, 36 AD2d 364, 367, affid 29 NY2d 921). Here, respondents have submitted no evidence justifying the conclusion that a female police officer, by virtue of her sex, is unqualified to serve as police sergeant. In Matter of Berni v Leonard (69 Misc 2d 935, affd 40 AD2d 701, affd 32 NY2d 933, cert den 414 US 1045), Special Term stated (p 937): *430 "The idea that women as such cannot be 'patrolmen’ will not be upheld unless supported by actual proof’. It was pointed out that, there, women could take an examination for the position of policewoman sergeant and none of the women excluded from the police sergeant’s examination, under rules of the County Civil Service Commission and the Police Department, had experience relating to duties exclusively reserved for men. The Court of Appeals held (p 934) that the Civil Service Commission prescription to include four years’ experience as a police patrolman was not per se unreasonable and bore a sufficient relationship with the position to be filled "upon the facts in this case.” It also stated that the record did not sustain a claim, although none was made, that women were denied the opportunity to become patrolmen. But, in the instant situation, there is no policewoman sergeant position in the Schenectady Police Department; the County Civil Service Department had found that complainant had equivalent experience to that of four years as police patrolman; there is undisputed proof that, at the time complainant took her written examination, the tests for police patrolman and policewoman were the same; and, most significantly, the experience of the male appointee, while in the Youth Aid Bureau, corresponded to that of the female complainant in the same bureau.
Although public employers are not excluded from the sanctions directed toward discriminatory practices under the Human Rights Law (Board of Educ. of Union Free School Dist. No. 2, East Williston, Town of North Hempstead v New York State Div. of Human Rights, 42 AD2d 49, 51, affd 35 NY2d 673, supra; Matter of Glen Cove Municipal Civ. Serv. Comm. v Glen Cove Nat. Assn. for Advancement of Colored People, 34 AD2d 956; cf. Matter of Board of Higher Educ. of City of N. Y. v Carter, 14 NY2d 138, supra), the commissioner did not have the power to direct the city and its police department to offer complainant the next available position of police sergeant, since such a direction would in effect deprive the appointing authority of the power of selection (Matter of Berger v Walsh, 291 NY 220, 223; Matter of Delicati v Schechter, 3 AD2d 19, 21). Since the award of compensatory damages is dependent upon the offer of appointment and since that part of the commissioner’s order is defective, the monetary award was also invalid.
The order of the Appellate Division should be reversed and the matter remitted to that court, with directions to remand *431 for further proceedings, not inconsistent herewith, to effectuate the purposes of the Human Rights Law (see Executive Law, § 297, subd 4, par c).