■ McLEAN TRUCKING COMPANY, Petitioner, v STATE HUMAN RIGHTS APPEAL BOARD et al., Respondents. — Determinations of the State Human Rights Appeal Board, dated July 14, 1980, affirming an order of the State Division of Human Rights, dated July 16, 1979, which upheld the complaints of respondents Kurz, O'Brien and Shumalski and awarded them compensatory damages, and affirming an order of the State Division of Human Rights, dated July 16, 1979, which upheld the complaint of respondent Travers and awarded him compensatory damages, confirmed, without costs, and cross petitions by the State Division of Human Rights for orders of enforcement granted. The facts as to complainants Kurz, O'Brien and Shumalski are substantially as set forth in the dissent. We find the within orders to have been supported by substantial evidence on the whole record (Executive Law, § 297-a, subd 7, par d) and not arbitrary, capricious or characterized by an abuse of discretion (Executive Law, § 297-a, subd 7, par e); and that the findings upon which said orders were based were supported by sufficient evidence on the record considered as a whole and are therefore conclusive (Executive Law, § 298). Based upon these findings the orders of

the appeal board should not be disturbed *(City of Schenectady v State Div. of Human Rights,* 37 NY2d 421, 424). "Judicial review of the determination made by an administrative agency, such as the State Division of Human Rights, is limited to a consideration of whether [it] was supported by substantial evidence upon the whole record" *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181). As to Kurz, O'Brien and Shumalski, not only did McLean fail to obtain a written medical report in each case, pursuant to Federal regulations, but it failed to call the physician as a witness. It had no records to establish what findings were made by the doctor as to the nature or extent of the alleged disabling condition of each complainant and was not able to establish the relationship of the alleged conditions to the requirements of the positions sought. Complainant Travers, then 23 years old, applied to respondent for employment as a tractor trailer driver. He was not hired because he did not meet its then minimum age requirement of 24 years. Federal Motor Carrier Safety Regulations of the Federal Highway Administration require as a minimum qualification only that a driver for a motor carrier be at least 21 years old. The partial consent decree entered into the United States District Court for the District of Columbia, and relied upon by the respondent, while permitting a minimum age requirement of up to 25 years, did not compel respondent to maintain that age as a minimum qualification and thus raised no conflict between the terms of the decree and the requirements of the Human Rights Law. Respondent did not establish that age 24 was a bona fide occupational qualification and indeed some months later lowered its minimum hiring age to 23 years. The record as to each respondent shows that the appeal board had the right to affirm the findings of discrimination by the Division of Human Rights. Concur — Fein, J. P., Markewich and Carro, JJ.

Sandler, J., dissents in part in a memorandum as follows: I cannot agree that the record supports the decision of the New York State Division of Human Rights insofar as it finds petitioner McLean Trucking Company guilty of discrimination on the basis of disabilities allegedly unrelated to the jobs applied for (Executive Law, § 296, subd 1, par [a]; § 292, subd 21) with regard to complainants Kurz, O'Brien and Shumalski. Monetary damages were imposed on McLean in the form of back pay computed as the difference between wages earned by complainants at other jobs after their allegedly wrongful rejections by McLean, and the average wages of McLean's three highest paid truck drivers during the relevant periods. In addition, O'Brien was awarded $2,000 for mental anguish and humiliation, and Kurz and Shumalski were awarded $1,000 each on that ground. The essential facts are undisputed. McLean planned to open a major "breakbulk" terminal in Newburgh, New York, in 1977, and began recruiting applicants to fill 300 truck driver positions. About 900 people applied for the 300 positions, including the three complainants. Every applicant was required to pass a physical examination, including a back X ray. McLean arranged to have the X rays examined by Dr. Javad Marhamata, an orthopedic surgeon affiliated with a local hospital. The doctor reported to McLean by telephone that the X rays of Kurz, O'Brien and Shumalski revealed back problems, and they were then notified by McLean that their applications were rejected on that basis. None of the complainants availed himself of a procedure under 49 CFR 391.47 of the Federal Motor Carrier Safety Regulations promulgated by the United States Department of Transportation whereby an applicant rejected for employment based on physical disability can have an examination performed by his own physician. If that physician's diagnosis differs from that of the motor carrier's physician, the section

provides a means of administrative resolution of the conflict. Instead, complaints were made to the State Division of Human Rights alleging that complainants had been discriminated against on the basis of back disabilities that they did not have, and thereby suffered mental anguish and humiliation as well as loss of earnings. In essence, the charge sustained against McLean was that its examining physician made a mistaken diagnosis for which it should suffer monetary damages and bear the offensive label of having been found guilty of discriminating against handicapped persons. This result is all the more objectionable since there is not the slightest hint of bad faith on McLean's part, McLean's technical failure to obtain a *written* medical report in each case is attributable to its efforts to quickly screen a large number of X-ray examinations and thereby facilitate the establishment of over 300 new employment opportunities in a rural area of New York State, and complainants had the means readily at hand to correct any errors of medical diagnosis but failed to avail themselves of the procedure specifically designed to correct such errors. Finally, it is noted that the division's Administrative Law Judge apparently imposed on McLean the burden of proving that the physical qualification requirements (and by implication complainants' unspecified back ailments) "bore a reasonable relationship to the qualifications necessary for *adequate and proper job performance* by a tractor-trailer driver." (Emphasis added.) This, however, was the standard to be applied only to discrimination cases arising after July 10, 1979, the effective date of the nonretroactive amendment to subdivision 21 of section 292 of the Executive Law, which now provides that the disability must be shown to "prevent [the complainant] from performing in a reasonable manner the activities involved in the job or occupation sought" *(Matter of Westinghouse Elec. Corp. v State Div. of Human Rights,* 49 NY2d 234, 237). Under the provision in effect in 1977, which governs this case, McLean was only required to show that a rejected applicant's disability was *related* to his ability to engage in the activities of the job or occupation. Certainly a back ailment, even if of a general character, is related to driving, loading and unloading tractor trailers. In *Matter of State Div. of Human Rights v Averill Park Cent. School Dist.* (59 AD2d 449, affd 46 NY2d 950), it was held sufficient, to exclude the case from the statutory proscription against discrimination under the Human Rights Law prior to July 10, 1979, that a school bus driver had a partial loss of hearing. It was *not* considered necessary to show that the extent of his hearing loss was such as to impair his ability to operate a school bus *(Matter of Westinghouse Elec. Corp. v State Div. of Human Rights,* 49 NY2d 234, 237-238, *supra).* Our State Human Rights Law was enacted to prohibit discrimination, prejudice and intolerance which "not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state" (Executive Law, § 290, subd 3). The decision of the division represents a strained application of the law to conduct wholly unrelated to the type of behavior intended to be interdicted, leading to an almost absurd result. While it would have been preferable for McLean to have obtained written medical reports from the physician (if indeed that was here feasible considering the number of examinations performed) the failure to introduce such reports into evidence, and the failure of the specially retained physician to testify, does not justify the result here reached. It is apparent from the record that McLean did in fact reject complainants' applications relying upon the physician's reports, although communicated by telephone, that complainants' X rays revealed back problems of some nature. The record may support the finding, implied by the Administrative Law Judge, that

complainants did not in fact suffer from back ailments. But the purpose of the Human Rights Law, as applied to this case, is to prohibit unjustified discrimination against handicapped people, not to impose penalties on an employer who rejects a nonhandicapped applicant because a physician made an error in medical diagnosis. "The bar of the Human Rights Law is not applicable to right every wrong, but applies only where 'the employment decision was in fact actuated by discrimination'" (State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd., 48 NY2d 276, 285, n 4). There is not a scintilla of evidence that McLean's decisions to reject the applications of Kurz, O'Brien and Shumalski were in fact actuated by discrimination. Accordingly, the determination of the State Human Rights Appeal Board insofar as it affirmed the order of the State Division of Human Rights finding that petitioner violated section 296 (subd 1, par [a]) of the Executive Law with regard to complainants Kurz, O'Brien and Shumalski, and imposing penalties, should be annulled. The cross petitions for enforcement of the division's orders with regard to those complainants should be denied.