Hancock, Jr., J.
(dissenting). The sole question is whether the determination of the New York State Division of Human Rights — that complainant was the victim of unlawful sex discrimination — is supported by sufficient evidence in the record. Inasmuch as complainant was denied a promotion solely because she is a woman and it was entirely reasonable on this record for the Division to conclude, after conducting a full evidentiary hearing, that the Oneida County Sheriffs Department failed to prove that sex was a bona fide occupational qualification (BFOQ) for the position, the governing statute and established case law dictate that the Division’s determination be confirmed. Therefore, I dissent.
I
The applicable law is clear. Section 296 of the Human Rights Law (Executive Law art 15) makes it "an unlawful discriminatory practice [f]or an employer * * * because of the * * * sex * * * of any individual * * * to discriminate against such individual in compensation or in terms, conditions or *977 privileges of employment”. Provisions of the Human Rights Law "shall be construed liberally for the accomplishment of [its] purposes” (§ 300) and a finding of unlawful discrimination by the Division of Human Rights "shall be conclusive if supported by sufficient evidence on the record considered as a whole” (§ 298). Accordingly, no reasonable determination by the Division that an employer has discriminated in violation of section 296 of the Human Rights Law may be disturbed on judicial review, even if the court might have weighed the evidence differently and reached a contrary result (Imperial Diner v State Human Rights Appeal Bd., 52 NY2d 72, 79; 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180; City of Schenectady v State Div. of Human Rights, 37 NY2d 421, 424, 428).
Additionally, whenever a prima facie showing of sex discrimination has been made, the burden shifts to the employer to prove the existence of an "independent legitimate reason” for the disparate treatment which is neither a pretext for nor an outgrowth of impermissible discrimination (Matter of Maloff v City Commn. on Human Rights [Anilyan], 46 NY2d 908, 910; Matter of Pace Coll, v Commission on Human Rights, 38 NY2d 28, 39-40; see also, McDonnell Douglas Corp. v Green, 411 US 792, 802-803). An employer may meet this burden by proving that a particular sex is a bona fide occupational qualification (State Div. of Human Rights v New York-Pennsylvania Professional Baseball League, 36 AD2d 364, 367-368, affd 29 NY2d 921; Executive Law § 296 [1] [d]; see also, Civil Rights Act of 1964, tit VII, § 703 [e] [42 USC § 2000e-2 (e)]). But this exception to the general prohibition of sex discrimination in employment is "extremely narrow” — the sex-based qualification must be reasonably necessary and not susceptible of reasonable alternatives (Dothard v Rawlinson, 433 US 321, 329, 333, 334; McDonnell Douglas Corp. v Green, supra, at 801; Griggs v Duke Power Co., 401 US 424, 431-432; see also, Carey v New York State Human Rights Appeal Bd., 61 AD2d 804, 805, affd on opn below 46 NY2d 1068, appeal dismissed 444 US 891; State Div. of Human Rights v New York-Pennsylvania Professional Baseball League, supra, at 368). In the present case, the Division found that the employer failed to meet its burden at the hearing and, therefore, concluded that the employer had unlawfully discriminated against complainant. In my view, that determination was, at the very least, a reasonable conclusion to be drawn from the record. Consequently, it should not have been disturbed.
*978 II
The basic facts are not in dispute. Complainant, Marie Johnson, is employed by the Oneida County Sheriffs Department as a Deputy Sheriff correction officer assigned to the female housing unit of the county jail. In April 1981, Ms. Johnson took and passed a civil service promotional examination for the position of correction officer sergeant. Though her examination score was among the highest and her work evaluations were always very good, Ms. Johnson was bypassed when a vacancy arose. The Sheriffs Department appointed a male candidate who ranked below her on the civil service list. There is no question that Ms. Johnson was qualified for the position of correction officer sergeant. The Sheriffs Department acknowledged that she was denied the appointment solely because she is a woman and the vacancy was in the male wing of the jail where only male sergeants were being assigned.
The only dispute at the Division hearing on Ms. Johnson’s complaint was whether the discrimination against her was justified by a sex-based BFOQ. The Sheriffs Department sought to prove that sex was a BFOQ for the position through the testimony of a single witness, the County Sheriff, who had made the final decision not to appoint Ms. Johnson. The Sheriff testified that Ms. Johnson would have been appointed if the vacancy had been in the female wing of the jail but, in order to protect the privacy rights of the male inmates, he did not assign women to the male wing. Corrections personnel, including sergeants, regularly conduct inspections of the cell-blocks, both announced and unannounced. Because the cot and toilet in each cell and the shower units in each cellblock are in open view and, further, because the inmates do not have sleepwear, the Sheriff believed it would violate the privacy of the male inmates to have a female sergeant inspecting the cellblocks where they are housed.
The Sheriff posited no security reasons for barring a female sergeant from the male wing; he raised only privacy concerns. Nevertheless, the Sheriff could not explain why the privacy of the male inmates could not be accommodated by measures such as the installation of shower curtains and the issuance of sleepwear; he said only that these were prohibited by the State Commissioner of Corrections. The Sheriff did not cite any particular law, regulation or rule supporting his contention, and the record contains no indication of any such prohi *979 bition. In fact, the State Department of Correctional Services does employ just such measures to protect the privacy of male inmates and, moreover, for many years has had a policy of assigning guards of all ranks, regardless of sex, to supervise male inmates (see, Forts v Ward, 621 F2d 1210, 1212, 1216-1217). Additionally, the Sheriff acknowledged that the privacy of inmates in their cells is already protected by procedures requiring the announcement of an officer of the opposite sex, and he offered no reason, security or otherwise, why those privacy interests could not be further accommodated. Most significantly, the Sheriff failed to explain why, with regard to the unannounced inspections, it was not feasible simply to have male guards walk through the cellblocks while a female sergeant maintained radio contact at the desk.
The availability of these alternatives, which were not shown by any evidence in the record to be either impracticable or prohibited, demonstrates clearly the reasonableness of the Division’s determination that the Sheriff’s Department failed to satisfy its burden of proving the existence of a sex-based BFOQ (see, Green v Missouri Pac. R. R. Co., 523 F2d 1290, 1298). While the appointment of only male sergeants to the male wing of the county jail might be convenient, that is not the test. The Sheriff’s Department was required to show a reasonable degree of necessity for its refusal to promote Ms. Johnson solely on the basis of her sex (see, Diaz v Pan Am. World Airways, 442 F2d 385, 388). As the Hearing Officer correctly concluded, this it failed to do.
In City of Schnectady v State Div. of Human Rights (supra, at 429), then Judge Cooke explained the policy underlying the Human Rights Law and guiding this court’s vigorous enforcement of the prohibition against sex discrimination: "when a hiring standard adversely affects equal employment opportunity for a protected class of persons, judicial scrutiny is warranted and it is incumbent upon the employer to show that the standard bears a rational relationship to and is a valid predictor of employee job performance and that it does not create an arbitrary, artificial and unnecessary barrier to employment, operating invidiously to discriminate on the basis of impermissible classification [emphasis added]”. Here, as in that case, the employer "submitted no evidence justifying the conclusion that a female * * * officer, by virtue of her sex, is unqualified to serve as a * * * sergeant” (id. [emphasis added]).
*980 III
The Sheriff’s Department’s reliance on Carey v New York State Human Rights Appeal Bd. (supra), decided nearly 10 years ago, is misplaced. The circumstances there were totally different. Moreover, contrary to the contention of the Sheriff’s Department, the decision in that case did not establish any per se rule permitting sex discrimination in the employment of correction officers. In Carey, this court affirmed the order of the Appellate Division which rejected a claim of unlawful sex discrimination brought by a man who was barred from taking the civil service examination for the position of correction officer (female). In contrast to the present case, the court in Carey was confirming the determination of the Division of Human Rights. In holding the Division’s determination to be conclusive under section 298 of the Human Rights Law, the court applied the correct standard of judicial review, stating that the "record of the proceedings before the Division of Human Rights and the Human Rights Appeal Board contain sufficient evidence to support the order here under review” (61 AD2d, at 805, supra [emphasis added]). The determination of the Division having been a reasonable one, supported by substantial evidence on the record as a whole, the court had no recourse under section 298 but to confirm the administrative finding. That is the standard that should be applied here.
Moreover, in Carey there was evidence of the special security needs of a correctional facility housing female inmates already sentenced to terms of imprisonment. Specifically, the evidence addressed the need for such intrusive measures as body searches of the female inmates which would be entirely inappropriate to have performed by a male guard. In the present case, no security needs were ever raised. The need for unannounced inspections was discussed by the Sheriff, but it was never suggested that performance of such inspections by a female would create security problems. The Sheriff contended only that inspections by a female might interfere with the male inmates’ privacy which, as has already been discussed, could apparently have been accommodated.
Additionally, in Carey, the examination which the complainant was not permitted to take was explicitly for positions having a sex-based BFOQ (see, Civil Service Law § 50 [8]; cf, Human Rights Law § 296 [1] [d]). In the present case, there was no such BFOQ limiting those who could take the county civil service examination for the position of correction officer *981 sergeant and, as the record shows, Ms. Johnson was expressly given permission to take the exam. The subsequent claim of the Sheriffs Department that the position in this particular situation is subject to a BFOQ which disqualifies Ms. Johnson is entitled to little weight unless well proven (see, City of Schenectady v State Div. of Human Rights, supra, at 429)— and it clearly has not been. Finally, as the dissenters at the Appellate Division in this case aptly noted, following the decision in Carey the State Department of Correctional Services adopted a sex-neutral employment policy. The execution and success of that policy surely undermines the continued validity of any sex-based BFOQ for the correction officer position denied to Ms. Johnson (see, Forts v Ward, supra, at 1216-1217; cf., Dothard v Rawlinson, 433 US, at 341, supra [Marshall, J., concurring in part]; Gunther v Iowa State Men’s Reformatory, 462 F Supp 952, 957).
For the foregoing reasons, I would reverse the order of the Appellate Division and reinstate the determination of the Division of Human Rights that the denial of complainant’s promotion was an unlawful discriminatory practice, on the basis of sex, in violation of section 296 of the Human Rights Law.
Order affirmed, etc.