OPINION OF THE COURT
Alice Schlesinger, J.
Before the court are three petitions brought pursuant to the City Human Rights Law (Administrative Code of City of NY § 8-101 et seq.) and CPLR article 78 to annul orders issued by the New York City Commission on Human Rights (the Commission) adopting the recommendations of Chief Administra *890 tive Law Judge (CALJ) Maldonado in the sex discrimination proceeding entitled Powers v Beame.
The New York City Police Department (Police Department) seeks to annul CALJ Maldonado’s decision in the proceedings brought by the complainants Helene Rinaldi and Regina McKay. Mary Ann Larsen and Regina McKay have also moved against CALJ Maldonado’s order as it relates to them (hereinafter Beame III).
In stage one of the proceedings, CALJ Kirchgaessner found that the complainants had established a prima facie case of gender-based discrimination. He identified the following practices to be violations of the Administrative Code:
(1) respondents’ hiring practices including the use of quotas limiting women to between 1 and 2% of the force;
(2) respondents’ layoff practices during the 1975 fiscal crisis;
(3) respondents’ reinstatement practices;
(4) respondents’ practice in requiring women to serve involuntary matron duty;
(5) respondents’ practice of assigning policewomen to only 7 out of 73 precincts while patrolmen were assigned to all precincts;
(6) respondents’ practice of restricting policewomen from certain types of duties and assignments such as anticrime, crime prevention, community relations, roll call and Captain’s clerical duty while patrolmen had opportunities to participate in all such duties and assignments;
(7) respondents’ practice of requiring policewomen to "fly” regularly from one precinct to another in order to provide matron duty while patrolmen would fly only in emergency situations;
(8) respondents’ practice of restricting policewomen from assignment to duties on a steady basis while patrolmen remain in steady posts within one precinct;
(9) respondents’ practice of restricting policewomen from regular participation in radio motor-patrol activities and/or assignment to steady partners and steady foot posts;
(10) respondents’ practice of denying policewomen certain schedules which were granted to patrolmen such as selection of annual vacation time with squads, emergency days off and "excusáis” on major holidays, and tour changes in order to go to school;
(11) respondents’ practice of denying transfers between patrolwomen and patrolmen;
*891 (12) respondents’ practice of requiring policewomen to be responsible to both the precinct and area commands and, therefore, responsible for coverage throughout a borough while patrolmen were responsible only to the precinct; and
(13) respondents’ practice of refusing to permit policewomen returning from maternity leave to be assigned to their former command while patrolmen assigned to the "military extended leave desk” were permitted to return to their former command upon expiration of such leave.
On November 8, 1991, the Commission adopted CALJ Kirchgaessner findings and directed hearings on each individual complainant’s damages.
The Police Department commenced a proceeding in the Supreme Court challenging the Commission’s November 8, 1991 decision and order. I dismissed the petition (hereinafter Beame I).
Thereafter, the parties commenced the stage two proceedings. On October 1, 1992 as amended on December 23, 1992, CALJ Maldonado issued a recommended decision in which she held that 45 complainants had established timely claims. She recommended that the successful complainants were entitled to retroactive seniority to the position they would have achieved but for the discrimination. Additionally, she recommended retroactive adjustments to the women’s pension benefit levels to reflect their earlier appointment dates.
The Commission adopted CALJ Maldonado’s recommendations. The Police Department also appealed this order. On June 22, 1993,1 dismissed the petition (hereinafter Beame II).
Two arguments raised in Beame II and again raised in the instant proceedings merit a brief discussion.
The Police Department, through these proceedings, has maintained that the award of retroactive seniority may not be granted because it is not reasonably related to the alleged wrong that was established during the limitations period. Essentially, they assert that mandatory matron duty is unrelated to any injury a complainant may have sustained.
I rejected this argument in Beame II. The Administrative Code grants the Commission broad power to fashion the appropriate remedy.
This remedy is reasonably related to the discriminatory conduct. As the Commission found in Beame I, excessive matron duty affected promotional opportunities of women *892 police officers. They received lower evaluations, fewer awards, lower examination scores. Furthermore, the complainants’ precinct assignments were restricted and as a result they failed to receive the patrol experience necessary for advancement.
Thus, it is clear that retroactive seniority is the appropriate remedy to make the complainants whole.
Second, the Police Department has consistently maintained that the Commission lacks authority to adjust the successful complainants’ pension levels and benefits because the pension fund is not a party to these proceedings.
I found this argument to lack merit in Beame II because the changes to the pension levels is an incidental result based on the adjustment of seniority dates. The pension fund need not be a party for this purpose.
Before discussing CALJ Maldonado’s findings in Beame III two legal points merit discussion. First, the judiciary has a limited role in reviewing the Commission’s factual determinations. "Unlawful discrimination in the present day is generally practiced in subtle ways * * * That others would require stronger evidence to reach the ultimate factual inferences is not relevant. The inference-making function, as it is exercised at the evidentiary or fact-finding level, is exclusively that of the administrative agency” (State Div. of Human Rights v Wagner, 39 NY2d 865, 866 [1976] [citations omitted]).
Second, section 8-120 of the Administrative Code grants the Commission broad power to fashion the appropriate relief to remedy discriminatory conduct. "[T]he relief imposed by the Commissioner need only be reasonably related to the discriminatory conduct. 'Unless the award is so arbitrary and capricious as to constitute an abuse of discretion, it is not erroneous as a matter of law. (Matter of Imperial Diner v State Human Rights Appeal Bd., 52 NY2d 72, 79’ ”) (Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207, 217 [1991] [other citations omitted].)
I. Beam v DeLeon, New York City Commission on Human Rights, and Helene Rinaldi.
CALJ Maldonado recommended that Rinaldi’s seniority be adjusted to reflect her retroactive appointment as a police trainee on November 7, 1966 and that her appointment date as a police officer be changed to December 14, 1969. Further, she recommended changes in Rinaldi’s appointment dates to Sergeant as of November 1, 1974; revision of appointment to *893 Lieutenant as of April 29, 1983; and revision of appointment to Captain as of August 16, 1985.
Rinaldi was awarded retroactive seniority, back pay and pension benefits and eligibility. The back pay award was to run from January 6, 1976. Finally, Maldonado found that Rinaldi was entitled to $35,000 as compensation for mental anguish.
These recommendations were adopted (with some minor modifications) by the Commission on January 29,1993.
The Police Department maintains that the Commission’s adoption of CALJ Maldonado’s decision was arbitrary and capricious because the burden of proving that the complainant was not entitled to relief during the stage two proceedings was placed on it.
I disagree. CALJ Maldonado held that each individual complainant was first required to establish that she was ready, willing and able to take the position to which she claimed entitlement. Once this had been established then the Police Department had the burden to rebut the presumptive entitlement to relief. Accordingly, it would have to show a legitimate nondiscriminatory reason for denying relief to the complainant.
The shifting of burden in this manner is consistent with Federal case law relating to Title VII cases (see, Albermarle Paper Co. v Moody, 422 US 405 [1975]; Franks v Bowman Transp. Co., 424 US 747 [1976]; Teamsters v United States, 431 US 324 [1977]).
Next, the Police Department argues that the award of retroactive appointment and promotion dates violates statutory discretion to choose one of three eligible individuals from a civil service list (City of Schenectady v State Div. of Human Rights, 37 NY2d 421 [1975]).
In Schenectady (supra), the Court of Appeals held that "the commissioner did not have the power to direct the city and its police department to offer complainant the next available position of police sergeant, since such a direction would in effect deprive the appointing authority of the power of selection” (37 NY2d, at 430).
Subsequent to Schenectady (supra), the Court of Appeals in Matter of State Div. of Human Rights v City of Onondaga Sheriff’s Dept. (71 NY2d 623 [1988]), noting the Commissioner’s broad power to remedy discrimination, expressly stated that: "City of Schenectady (supra), and the case upon which it *894 is based, Matter of Burger v Walsh (291 NY 220), place no additional limitations on the Commissioner’s power to fashion a remedy for discrimination. These cases hold that where a person has not been considered fairly for an appointment by a public employer, the remedy that generally will make the individual whole, in addition to whatever money damages are warranted, is that the individual be fairly considered for the appointment. These cases recognize that it may be improper to go further and require that the person be appointed to the position because this could award more than a complainant was entitled to before the discrimination took place” (71 NY2d, at 634).
The rule that can be discerned from Matter of State Div. of Human Rights v City of Onondaga Sheriff’s Dept. (supra) is that the Commission is charged with the duty to make whole those individuals who are victims of discrimination, provided, of course, this remedy is reasonably related to the discriminatory conduct.
Accordingly, the Commission has the power to award retroactive promotion and/or appointment dates under circumstances such as in Rinaldi’s case, where individuals are prevented from taking entry level and/or promotional exams based solely on gender.[1]
Alternatively, the Police Department maintains that the Commission’s award of the revised appointment and promotion dates to Rinaldi are not supported by substantial evidence.
The record more than adequately supports the Chief Administrative Law Judge’s findings. Rinaldi from an early age showed an interest in wanting to become a police officer. She expressed her interest to her father who was a clerk with the transit police.
In high school she met male classmates who were in the process of becoming police trainees.[2]
Rinaldi wanted to become a police trainee. However, she was informed that the police trainee position was only open to *895 males and that she would have to wait for her 21st birthday to take the policewoman’s exam.
In order to gain experience for the exam, Rinaldi started working as a civilian clerk in the Police Department in 1968. In October 1969 she took and passed the first policewoman’s exam given after her 21st birthday. She was appointed as a policewoman on May 29, 1973.
On this record it is clear that Rinaldi has sustained her burden establishing that she was ready, willing, and able to become a police trainee in 1966. Therefore, her retroactive appointment date as a police officer to 1969 was appropriate.
Further, I find that the revised promotion dates are also supported by substantial evidence. Although Rinaldi failed the Sergeant’s examination in 1978, her explanation for this failure is supported by the record. Rinaldi stated that she had difficulty with questions on patrol, functions and supervision because she had limited experience in these areas. This occurred because she had been assigned to perform involuntary matron duty during her initial years as a police officer.
Thus, this forced alternative assignment put her at a distinct disadvantage in taking promotional exams and was a clear impediment to her promotion.
It is noteworthy that with the exception of the 1978 Sergeant’s exam, Rinaldi has taken and passed every other promotional exam with flying colors. For example, on the 1983 Sergeant’s exam Rinaldi achieved a 98 ranking out of 16,000 candidates who took the test. Rinaldi has advanced through the ranks and at the time of the hearing was a Lieutenant who had recently been upgraded to Commander in the detective squad.
Next, the Police Department maintains that the award of $35,000 in damages for mental anguish was excessive.
Medical or psychiatric treatment is not a necessary prerequisite for recovery for mental injury. It may be proved by the complainant’s own testimony "corroborated by reference^] to the circumstances of the alleged misconduct” (Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207, 216 [1991], supra). However, "there must be some evidence of the magnitude of the injury, to assure that the Commissioner’s damage award is neither punitive nor arbitrary” (78 NY2d, at 217).
In this regard Rinaldi testified that the Police Department’s discriminatory practice of assigning policewomen to involun *896 tory matron duty caused her mental anguish. She found matron duty to be "horrible, revolting, and degrading work”. Her assignment included body-cavity searches, cleaning jail cells, removing garbage and providing prisoners with toilet paper.
From the time she was first appointed as a police officer in 1973, until 1978, Rinaldi was required to interrupt performance of police work such as anticrime and narcotic assignments in order to perform such tasks. She was distressed additionally because matron duty was an obvious impediment to career advancement.
I am unpersuaded by the Police Department’s position that the performance of matron duty is not a grounds upon which to award damages. Although some male officers did perform the same duties, they were disabled or on limited duty. Women officers, however, were treated differently. They were required to perform involuntary matron duty. Thus, the award is for the discriminatory treatment of women.
I find that the Commission’s award is supported by substantial evidence and is neither punitive nor arbitrary.
II. Beame v DeLeon, New York City Commission on Human Rights, and Regina McKay.
CALJ Maldonado held that based on the credible testimony McKay was ready, willing, and able to take the police trainee exam on March 12, 1967 had the exam been offered to women applicants. Further, respondents have failed to establish by a preponderance of the evidence that McKay had been denied access to the trainee exam for legitimate nondiscriminatory reasons.
In view of the above findings, McKay was awarded retroactive appointment as a police trainee to November 7, 1966. Her appointment date as police officer was adjusted to September 16, 1969. McKay was awarded back pay, pension and pension benefits and eligibility. CALJ Maldonado also found that McKay was entitled to $3,500 as compensation for mental anguish.
The tribunal however denied McKay a retroactive promotion to Sergeant finding that she was not ready, willing, and able to take on that position.[3]
The Police Department contends that the award of a retro *897 active appointment is not supported by substantial evidence. It maintains that McKay had been rejected by two police departments in 1969. She was rejected by the New Rochelle Police Department because she was "25 pounds overweight”. The Yonkers Police Department rejected her because she failed the physical. Further, the Police Department asserts that McKay did not obtain a driver’s license until January 1972. The notice for examination required a driver’s license for appointment as a police officer. Accordingly, the Police Department asserts that McKay would not have met the requirements for an appointment in 1969.
The Commission’s award of retroactive seniority is supported by substantial evidence. This finding was based on McKay’s testimony that she became interested in police work at a young age. In high school she learned through the "Chief’ that 17-year-old males were allowed to take the police trainee exam. She did not apply for the position because the exam at the time was only open to men. McKay maintained that had the trainee exam been open to her, she would have taken it.
In January 1967 she began working for the Police Department as a clerk typist. Male police trainees worked with her doing essentially the same tasks but earned more money.
McKay took and passed the first policewoman exam given after her 21st birthday.
This unrebutted testimony, which the Chief Administrative Law Judge found credible, establishes conclusively that McKay was ready, willing, and able to take the police trainee exam that was given on March 12, 1967.
The Police Department places great weight on the fact that McKay’s application to the New Rochelle and Yonkers Police Departments were rejected. However, as the Chief Administrative Law Judge noted in her decision, no evidence was offered of McKay’s weight and physical condition as well as the medical and weight requirements for the police trainee position. In fact McKay did pass the physical exam for a policewoman in late 1969. Thus, one could reasonably infer that McKay was fit for the trainee position in November 1966.
Therefore, it was speculative to assume that McKay was denied the opportunity to apply for the police trainee position for legitimate nondiscriminatory reasons.
Nor am I persuaded that the seniority date of 1969 was incorrect because McKay did not obtain a driver’s license *898 until January 1972. There was no prerequisite for obtaining a driver’s license for the trainee position. McKay had ample time to obtain a driver’s license between the time she would have become a trainee had she been permitted to and her 21st birthday.
The Police Department attacks the $3,500 damage award on the ground that matron duty was necessary and was performed by male officers as well. This argument, however, ignores one of the core findings of the tribunal that the Police Department engaged in a discriminatory policy and practice of regularly assigning policewomen to involuntary matron duty which hindered promotional activities.[4] Thus, McKay has been compensated for the mental distress that she suffered as a result of discriminatory practice and not for the mere performance of matron duty.
Moreover, the damage award can also be sustained on McKay’s testimony that she found strip searches, "horrendous”, "disgusting”, and "depressing”. Instead of being assigned to anticrime and patrol work, her reasons for choosing a career as a police officer, McKay was required to perform matron duty which requires little police training and today is performed by civilians.
Under these circumstances, the award of $3,500 compensation for mental distress for the performance of matron duty is appropriate.
III. Mary Ann Larsen and Regina McKay v DeLeon
Regina McKay moves to vacate the Commission’s order to the extent that it declined to award McKay a retroactive promotion to Sergeant.
CALJ Maldonado found that McKay was not eligible to take the 1973 Sergeant exam because she had insufficient tenure as a police officer. She was unable to take the 1978 exam because she was on sick leave.
McKay maintains that the Commission erred in failing to grant her retroactive promotion to Sergeant because she was ineligible to take the 1973 Sergeant’s exam as a result of the *899 Police Department’s discriminatory practices. She contends that she was ineligible to take the exam because of the discriminatory delay in her hiring.
At the hearing, McKay testified that had she been eligible to take the 1973 examination she would have taken it. However, CALJ Maldonado found "there is no credible evidence in the record, including information on McKay’s six-year history as a police officer, demonstrating a genuine interest in becoming a Sergeant”.
The Chief Administrative Law Judge’s factual findings when supported by sufficient evidence are binding on this court. (Matter of New York City Tr. Auth. v State Div. of Human Rights, supra, at 216.)
McKay was on the force for only a few years and, therefore, did not qualify to take the exam. In 1978, she was unable to take the exam because of a disability which resulted in a career-ending injury. To award McKay a retroactive promotion to Sergeant under these circumstances would be speculative. The mere fact that she wanted the position is insufficient. Other than McKay’s statement, there is simply no evidence in the record from which one can infer that she was ready, willing, and able to accept the position.
Accordingly, McKay’s application to annul the Commission’s denial of retroactive promotion to Sergeant is denied.
Petitioner Mary Ann Larsen also moves to annul the Commission’s order which dismissed her complaint on the ground that it was untimely.
Mary Ann Larsen filed her complaint on June 16, 1981. Pursuant to the Commission’s November 8, 1991 order Larsen was required to show that at least 1 of the 13 discriminatory policies and practices identified by CALJ Kirchgaessner were applied to her at least once within the year prior to the date she filed the complaint.
Larsen asserted that she had been subjected to a number of discriminatory acts between June 16, 1980 and June 16, 1981. On April 12, 1981 she was required to "fly” from her patrol assignment to a precinct and perform matron duty. She also testified that women police officers were assigned less accurate weapons that contained fewer bullets. Further, Larsen maintained that women officers were required to make larger pension contributions than male officers.
Larsen argues that the Police Department’s discriminatory hiring practices delayed her appointment date. Additionally, *900 Larsen urges that during the limitation period applicable to her there was in existence the list of the 1978 exam. Although she did not pass the Sergeant’s examination, but for the Police Department’s discriminatory policies and practices, she would have been on the 1978 list.
The Commission rejected these arguments for sound reasons.
On April 12, 1981, Larsen was assigned to the 13th Precinct and was on radio patrol. She was ordered to "fly” to the 9th Precinct to search a female prisoner. The search took 5 minutes and the entire assignment took a mere 15 minutes. This single isolated incident does not amount to a discriminatory policy and practice. As the Chief Administrative Law Judge noted, on occasion in emergency situations, men are also required to "fly”. What made the practice discriminatory was the regular assignment of women to "fly” and perform matron duty while male officers only performed it in emergency situations.
Nor may the size and type of weapons assigned to police officers be used as a basis to establish a timely claim. In its April 26, 1990, decision and order, the Commission directed CALJ Kirchgaessner to separately list each unlawful discriminatory practice.
On May 14, 1991, the Chief Administrative Law Judge identified 13 lawful discriminatory practices (see, supra, at 890-891). The Commission in its November 8, 1991 order held that: "each complainant who proves that the policies and practices which the Administrative Law Judge identified, were applied to her at least once within one year prior to the date she filed her complaint shall have the opportunity to prove any and all damages which she sustained as a result of these policies and practices.”
Accordingly, as is plainly apparent from the above quote, Larsen must establish that 1 of the 13 discriminatory practices and policies was applied to her during the appropriate time frame. It would be impermissible at this late juncture to expand the list of practices to include policies and practices that were not raised in stage one.
Nor may the Police Department’s practice of requiring female police officers to pay higher pension contributions be used as a means to establish the timeliness of Larsen’s complaint. Although this practice was discussed in CALJ Kirchgaessner’s October 31, 1989 decision it was never included *901 as a discriminatory practice in the May 14, 1991 recommended decision.
I am not going to engage in speculation as to why the pension contribution was not placed on the list. It may well be because women officers received refunds for excess pension contributions that were made between April 25, 1984 and December 24, 1984, before CALJ Kirchgaessner’s decision. In any event this issue should have been raised before the Commission and Supreme Court in the Beame I proceedings, and not in the stage two proceedings.
I agree with the Police Department and the Commission that retroactive seniority may not be a basis to establish a timely claim. Retroactive seniority is a remedy which may be awarded to a successful complainant who was affected by 1 of the 13 policies and practices identified in stage one.
Finally, the 1978 Sergeant’s exam may not be utilized to establish a timely complaint. Larsen maintains that she was "hopelessly disadvantaged” as a result of being assigned to involuntary matron duty. Thus, like Helene Rinaldi, Larsen maintains she too was unable to pass the Sergeant’s exam as a result of unlawful and discriminatory assignments.
Larsen, unlike Rinaldi, has never been able to pass any of the Sergeant’s exams she has taken. Moreover, again in contrast to Rinaldi, she was assigned to matron’s duty on only one occasion for the entire duration of 15 minutes.
Therefore, under these circumstances, the Commission properly rejected as speculative Larsen’s contention that if not for the Police Department’s discriminatory practices, she would have passed the 1978 examination for promotion to Sergeant.
For the foregoing reasons, the petition brought by Larsen and McKay is dismissed.

. Moreover, it is of note that Rinaldi had been appointed off the list to various positions within the Department. Therefore, it is disingenuous to argue that the Commission is somehow usurping the power of the appointing authority.

. At that time, upon passing the police trainee exam, an individual was given a civilian appointment with the police department to the age of 21. The male trainee on his 21st birthday was then automatically appointed as a police officer.

. McKay appeals this denial. This claim is addressed in the third petition brought by McKay and Mary Ann Larsen.

. In December 1975 McKay sustained a career-ending injury. Thus, the Police Department argues that performance of matron duty did not impede her promotional opportunities. It is true that the four months of matron duty did not interfere with McKay’s promotional opportunities. However, this does not lessen the mental distress she sustained. Clearly, at the time she was performing this duty, she did not know that she would sustain a career-ending injury.