Titone, J.
(dissenting in part). The majority’s effort to distinguish this case from our precedents is unsuccessful. Despite the majority’s efforts to carve out a human rights exception to the principles that have long been held to govern civil service appointments, it remains clear that the relief awarded to these complainants cannot logically be sustained in light of Matter of Andriola v Ortiz (82 NY2d 320) and City of Schenectady v State Div. of Human Rights (37 NY2d 421). Accordingly, I dissent from so much of the majority’s holding as sustains the agency award.
*302 The "one-in-three” rule currently set forth in Civil Service Law § 61 embodies the long-accepted principle that, within the constraints of the constitutional merit and fitness requirements (NY Const, art V, § 6), appointing authorities are to be accorded complete discretion in their choice of civil service appointees (see, Matter of Andriola v Ortiz, supra, at 324; Matter of Berger v Walsh, 291 NY 220, 223; People ex rel. Balcom v Mosher, 163 NY 32). Under the rule, the appointing authority is permitted to designate any one of the three individuals whose names are highest on the list of qualified eligibles (see, Matter of Cassidy v Municipal Civ. Serv. Commn., 37 NY2d 526; see also, People ex rel. Qua v Gaffney, 142 App Div 122, affd 201 NY 535). As the Court stated in Matter of Andriola v Ortiz (supra, at 324), "[o]ur decisions repeatedly have acknowledged the importance of the discretionary governmental appointive power embodied in Civil Service Law § 61, and have rejected attempts to invoke the aid of the courts to limit the reasonable exercise of that discretion.” Thus, our Court has previously held that the appointment or promotion of a particular individual cannot be mandated even to remedy past discrimination or legal error in the establishment or implementation of an eligible list (City of Schenectady v State Div. of Human Rights, supra, at 430; Matter of Berger v Walsh, supra).
In Matter of Andriola v Ortiz (supra), the Court answered a previously unresolved question about the scope of the principle and, in doing so, significantly expanded the principle’s effect. In Andriola, the Court held that an award of retroactive seniority benefits and back pay to remedy a grading error was inappropriate because such an award was tantamount to "mandating [the petitioners’] retroactive promotion” and was thus "fundamentally inconsistent with the letter and spirit of Civil Service Law § 61” (82 NY2d, at 325).[1]
Although this case too involves an award of retroactive seniority, the majority holds that Andriola is not controlling. The critical distinguishing feature that the majority perceives is that, unlike the remedial order in Andriola, the directive here came from the New York City Human Rights Commission, which has been given "broad remedial powers” to alleviate and correct discrimination. In the majority’s view, the existence of such powers and the absence of a "statutory exception” for cases involving the civil service lead to the conclusion that *303 the City Human Rights Commission, unlike the courts of this State, may issue orders that would otherwise be "fundamentally inconsistent with the letter and spirit of Civil Service Law § 61.”
The majority’s central premise — that an administrative agency has power beyond that of the courts to override a legislative enactment — is itself curious enough to raise a few eyebrows. With a somewhat closer analysis, the logical flaws in the proposition are fully exposed. First, the majority’s assertion that the City Human Rights Commission has the power to order remediation that is inconsistent with the command of Civil Service Law § 61 is directly refuted by our holding in City of Schenectady v State Div. of Human Rights (supra). Although in that case we upheld the Human Rights Division’s determination that unlawful gender-based discrimination had occurred, we concluded that the agency’s Commissioner "did not have the power to direct the city and its police department to offer complainant the next available position * * * since such a direction would in effect deprive the appointing authority of the power of selection” (id., at 430 [emphasis supplied]). This holding represents as clear and unequivocal a statement as language permits that despite their broad remedial powers (see, Matter of Imperial Diner v State Human Rights Appeals Bd., 52 NY2d 72, 79; see also, Matter of State Div. of Human Rights [Cottongim] v County of Onondaga Sheriff's Dept, 71 NY2d 623, 634), the State’s human rights agencies do not have the power to nullify an appointing authority’s Civil Service Law § 61 prerogatives.
The majority attempts to distinguish away the Schenectady holding on the ground that that case, unlike this one, did not involve retroactive seniority rights. However, the majority’s logic on this point is irreconcilable with the Court’s clear holding in Andriola that an award of retroactive seniority is the equivalent of a retroactive direction to promote and, as such, violates both the Civil Service Law and the case law applying it (82 NY2d, at 325).
Similarly unpersuasive is the majority’s effort to distinguish this case from Schenectady on the basis of the agency’s finding here that complainants would have been appointed to the positions they sought if the appointing authority had considered their candidacies in good faith. We rejected an analogous argument in Andriola, where the petitioners were actually given the appointments they sought after the grading error they challenged was corrected. A fortiori, by recognizing and giving *304 effect to the agency’s "finding” that "good faith” on the part of the appointing authority would have produced an appointment, the majority has violated the "letter and spirit” of section 61, since it has, in effect, permitted the agency to substitute its findings for the appointment authority’s discretionary prerogatives. At least in Andriola the decision to promote the petitioner was eventually made by the appointing authority itself. Here, in contrast, it is the human rights agency’s conclusion about what the appointing authority should have done that the majority has deemed controlling.
Finally, in its effort to distinguish and narrow the holding in Schenectady, the majority has misread the analysis in Matter of State Div. of Human Rights (Cottongim) v County of Onondaga Sheriff’s Dept. (supra), in which Schenectady was discussed. Cottongim involved the discriminatory discharge of a Sheriff’s Department employee who served "at will.” We upheld a human rights agency’s decision to direct her reinstatement and, in so ruling, concluded that Schenectady was not an obstacle to awarding that form of relief. However, our ruling in Cottongim was not, as the majority suggests, a blanket authorization for all human rights agencies to impose any remedy they deem to be " 'rationally related to the injury sought to be redressed’ ” (see, majority opn, at 299). Although the quoted language was used in Cottongim, it is apparent from the context that it was intended to be read in conjunction with the well-established principle that a remedy is "rationally related to the injury” when it is no greater than that which is required to make the aggrieved complainant whole (see, 71 NY2d, at 634).
In the civil service context, making the complainant whole "generally” means placing him or her in a position to "be fairly considered for the appointment” (id.). In Cottongim, the additional step of directing the employee’s reinstatement was appropriate because it "only return[ed] to the employee something that * * * she at all times possessed, but was deprived of by discrimination” (id.). However, as the Cottongim Court recognized, it would be "improper” in a case involving appointment or promotion to direct more than that the candidate be given fair consideration, since "this could award more than a complainant was entitled to before the discrimination took place” (id.). Significantly, a person who attains a position on a list of eligibles "does not acquire any 'legally protect-able interest’ in” appointment (Matter of Andriola v Ortiz, supra, at 324, citing Matter of Cassidy v Municipal Civ. Serv. *305 Commn., supra, at 529; Hurley v Board of Educ., 270 NY 275, 279). Accordingly, far from limiting Schenectady to a bland "'restatement that the remedy [for a human rights violation] must he rationally related to the injury sought to he redressed’ ” (majority opn, at 299, quoting Matter of State Div. of Human Rights [Cottongim] v County of Onondaga Sheriff’s Dept., supra, at 634), Cottongim actually reiterates and reaffirms Schenectady’s holding that, in the civil service context, the "rational relation” standard cannot be satisfied by an order that directs an appointment, a promotion or their equivalents.
In the final analysis, the majority’s rationale is fundamentally flawed by its ex cathedra assertion that the governmental policy against prohibited discrimination "enjoys the highest statutory” priority (majority opn, at 296). While discrimination on the basis of race, gender, marital status and disability are grave societal evils that the Legislature has quite properly acted to remedy, there is nothing in the mission statements that the majority cites (Administrative Code of City of NY § 8-101; Executive Law § 290 [3])— or anywhere else in the local and State human rights lawsto indicate that the human rights Commissioners were intended to have the power to override other statutory mandates such as Civil Service Law § 61.
Contrary to the majority’s assertion, there was no need for the Legislature to specify a discrete "statutory exception” to the agency’s broad remedial powers for cases involving government employers. Such an "exception” follows naturally from Civil Service Law § 61, which should be presumed to govern in those cases, at least in the absence of an overriding legislative prescription.
Indeed, the majority’s suggestion that a "statutory exception” is required in order to make the human rights laws’ remedies compatible with the Civil Service Law is unprecedented. It is a usurpation for a court to first posit a hierarchy of laws based on its own value judgments and then demand evidence of a legislative intent to create "exceptions” to modify that hierarchy. Our role in the judiciary is not to create a hierarchy of legislative enactments. Rather, it is our duty in construing and applying the State’s statutes to attempt to harmonize them so that all are given an equal effect wherever possible and none are unnecessarily relegated to inferior status.
Here, the task of harmonizing the New York City human rights provisions and the Civil Service Law is a simple one, particularly in light of the absence of any real inconsistency and the existence of long-standing case law, notably Sche *306 nectady and Cottongim, in which the task has already been accomplished. The human rights laws were enacted to ameliorate and redress discrimination in the private and public sectors, and the State and local agencies charged with their enforcement were given a broad range of remedial powers to be used in appropriate circumstances. The statutory power to order " 'hiring, reinstatement or upgrading of employees’ ” (see, majority opn, at 296) may be invoked where appropriate, i.e. where not prohibited by other preexisting statutory commands. It is thus available in a wide variety of cases not involving governmental employment. In the other, presumably smaller class of cases involving discrimination in public employment (to which Civil Service Law § 61 is applicable), other remedial measures are to be used.
Under this harmonizing approach, it is unnecessary to look for any "statutory exceptions” to the Commissioners’ broad remedial powers. The human rights laws and Civil Service Law § 61 are coexisting, coequal legislative enactments. There is no more need to find an express "exception” for government employment in the human rights laws than there is to find an express "exception” for human rights remedies in the Civil Service Law. The two statutes may simply be viewed as operating in their own respective spheres. Contrary to the majority’s suggestion, this approach does not reduce the broad scope of the Commissioners’ remedial authority. It merely recognizes, as we recognized in Cottongim (supra) that the Commissioners’ authority does not extend to giving candidates for government positions more than they would have had had the discrimination not occurred (see, Matter of State Div. of Human Rights [Cottongim] v County of Onondaga Sheriff’s Dept., supra) and that, in a case involving an initial appointment or promotion, the candidate’s rights are conditioned by the discretion afforded the appointing authority under Civil Service Law § 61 (see, City of Schenectady v State Div. of Human Rights, supra).[2]
As established in Schenectady, the broad remedial authority granted to the human rights Commissioners to remedy discrimination must be viewed against the template of the one- *307 in-three rule embodied in Civil Service Law § 61 whenever the claimed discrimination has occurred in the context of civil service appointments and promotions. Since this Court has recently concluded that the constraints of that statute are violated as much when a complainant is granted retroactive seniority as when a complainant is directly granted the sought-after appointment or promotion (Matter of Andriola v Ortiz, supra), I would hold that the lower courts erred when they upheld the award of retroactive seniority in this case.[3] Had they not been treated in a discriminatory manner, these complainants could have expected no more than fair consideration of their candidacies for promotion (cf., Dalton v Educational Testing Serv., 87 NY2d 384). It follows that the agency directive affording them seniority benefits as if they had been appointed from the outset is not "rationally related to the injury sought to be redressed” under Cottongim and Schenectady, and the determination ought to have been annulled.
Chief Judge Kaye and Judges Smith and Ciparick concur with Judge Levine; Judge Titone dissents in part in a separate opinion in which Judges Simons and Bellacosa concur.
Order, insofar as appealed from, modified in accordance with the opinion herein, with costs to respondents, and, as so modified, affirmed.

. Although I dissented on that point in Andriola, I recognize that the holding is binding precedent which constrains our analysis in this and other cases involving the same issue.

. The majority’s reliance on a perceived "single standard for judicial review” (majority opn, at 296) thus begs the question. The "single standard” to which the majority refers merely ensures that all decisions of the human rights agencies will be measured against the same "arbitrary and capricious” standard. In all contexts, that standard requires that the administrative decision in question be lawful. What constitutes lawfulness will vary depending on the particular setting and the existence of any applicable statutory prohibitions.

. I would also conclude, along with the majority, that the City Human Rights Commission acted improperly when it directed the promotion of complainant Helene Rinaldi.